## THE REX AMUSEMENT CO. ET AL. *v.* NOLAN.

*Landlord and tenant — Defectively executed lease — Tenancy from month to month, when — Provision for restoration of premises — Store room remodeled into moving picture theater.*

1. Where possession is taken under a defectively executed lease, or a lease void for any reason, fixing the period of tenancy at one or more years, and the rentals are payable monthly, such lease creates a tenancy from month to month only.

2. Where a building formerly used for a store room or rooms is leased for the purpose of conducting a motion picture show, and with the right and privilege of repairing and altering to suit the purposes of the lessee for a moving picture theater, and it is further provided that at the expiration of the lease the premises shall be surrendered in as good condition as they were in at the beginning of the term, and just before the alterations were made, the lessee, upon surrender or expiration of his lease, is not required to restore the building to its former or original condition as a store room or rooms, as it was at the beginning of his term and before the alterations were made, nor is he liable in damages for his failure so to do. He is only required by the terms of his contract to leave the building in as good condition as it was at the beginning of his term.

(Decided May 25, 1918.)

ERROR: Court of Appeals for Jefferson county.

*Mr. Ralph B. Cohen* and *Mr. Dio Rogers,* for plaintiffs in error.

*Mr. Edward McKinley* and *Mr. E. Dewitt Erskine,* for defendant in error.

FARR, J. On the 2d day of February, 1914, John Peters, as agent for The Rex Amusement Company, entered into a lease or rental agreement in writing with Thomas A. and Mary E. Nolan

for the rental of a two-story brick building located at the corner of Fourth and Main streets in the village of Toronto, Jefferson county.

The lease provided among other things that the term should be five years, beginning on the 1st day of March, 1914, and ending on the 28th day of February, 1919, and the rent agreed to be paid was the sum of $2,100, payable fifteen dollars per month on the first day of each month during the first year of said term and forty dollars per month during the remainder of said term.

It is further provided in said lease that the premises should be surrendered to the lessor at the end of said term in as good condition as they were in at the beginning. It is conceded that the premises were leased for the purpose of conducting a motion picture show therein, and it is also provided with reference to alterations in the building that the lessees should have "the right and privilege of repairing and altering same to suit the purposes of the lessees herein for a moving picture theater."

The Rex Amusement Company soon thereafter took possession of the premises and made certain alterations in the building, which alterations consisted among other things in removing a partition for which iron beams were substituted, in removing a stairway, altering the floor by lowering it at one end, and changing the entrance to the building.

Nolan did not rent the second story of the building to the Amusement Company, in which there were living rooms occupied by his family. Later the state authorities notified the Amusement Company that a picture show should not be conducted

in the first story of a building where there were living apartments over the same occupied as a dwelling, unless there were fireproof walls and ceilings separating same in such manner as to make the building safe and suitable for occupancy as such.

The record further discloses that Nolan and his family moved out of the second story, and were out of same for a period of some months while the alterations were being made, and it is claimed that during the time that Nolan did not occupy the rooms the Amusement Company had, by verbal agreement, contracted to pay his rental in another dwelling house

After the completion of the alterations or improvements it is disclosed that Nolan with his family returned and occupied the rooms over the picture show, when the state authorities again notified the Amusement Company that the building could not be utilized for a picture show unless the family removed from the upper story thereof, or unless the building was further improved or altered so that the living rooms would be safe for occupancy as such.

It is further disclosed that the Amusement Company closed its picture show in the building on the 24th of April, 1917, and abandoned the premises, but paid the rentals before abandonment to the 1st day of May following. In December, 1917, Nolan began a suit in the court of common pleas of Jefferson county. The petition contains four causes of action: In the first he seeks to recover the sum of $360 for the amount of rentals accrued and claimed to be due at the expiration of the

term and for the interim between the date of surrender or abandonment and the expiration of the year.

In the second cause of action he sets out the alterations made in the building by the amusement company, to prepare and make it suitable for use as a motion picture theater, and asks to recover the sum of $979, which he alleges it will cost to restore the building to the same condition as store rooms as it was in before the alterations were made.

In the third cause of action he recites the order of the state authorities with reference to his removal from the living rooms over said picture show, and avers that by verbal agreement the Amusement Company agreed to pay his rental in another building during the time the repairs or alterations were being made, and asks judgment in the sum of $120 as reimbursement for the rentals so paid by him. And in the fourth cause of action he asks to be compensated for the destruction or removal of a stairway leading from the first to the second floor, and says that the cost of restoring the same would be twenty-five dollars.

To this petition the Amusement Company filed an answer, and, answering plaintiff's first cause of action, avers that it was required by an order of the state to close said picture show because Nolan against its wish moved back into the living rooms over the auditorium, and that, by no fault of its own, it was compelled to close its show, and therefore denies all liability upon said cause of action for the remainder of the term from

the time it surrendered possession until the expiration of the year.

For answer to the second cause of action, relating to the changes or alterations made in the building, it is averred that it made said changes and had a right so to do by the terms of its agreement, and it further avers that it left the premises in as good, or better, condition, at the date of surrender, as they were in at the time it took possession at the beginning of the term. And for answer to the third cause of action it is averred that Nolan voluntarily agreed to remove from the rooms while the repairs were being made, and that it did not agree to reimburse him for the rentals which he paid for another dwelling house.

In answer to the fourth cause of action it is averred that the defendant knows nothing about the removal or destruction of the stairway and denies all liability. A cross-petition is filed, and in it it is alleged that the sum of $1,450 was expended in alterations, and $1,075 for picture show equipment, and by reason of the persistent occupancy of said living rooms by Nolan defendant was compelled to close its picture show, and in consequence suffered damage in the sum of $5,000, for which it asks judgment.

To this answer and cross-petition a reply was filed, denying the essential averments of the answer and the allegations of the cross-petition, and, the issues being joined, trial was had and judgment rendered, from which error is prosecuted here.

The issues here are therefore practically as follows:

1. Is Nolan entitled to recover from the Amusement Company for the rentals accruing between the date of abandonment of the premises and the expiration of the year?

2. Is he entitled to recover the amount that would be required to place the building in the same condition as store rooms that it was in at the beginning of the term?

3. Is he entitled to recover for the rentals paid by him during his temporary absence from the living rooms?

4. Is the Amusement Company liable for the removal or destruction of the stairway?

However, there are possibly two principal issues which it is most important to determine here:

First, it is assigned for error that the court erred in its charge as to the term of said lease and the amount of rentals that might be recovered thereunder.

It is conceded that the lease was for a term of five years, that it was not acknowledged or recorded, and was therefore void. *Richardson* v. *Bates,* 8 Ohio St., 257.

However, it is urged, since the parties went into possession under it, that it became effective as a lease from year to year. In support of that view *B. & O. Rd. Co.* v. *West,* 57 Ohio St., 161, is cited. The first paragraph of the syllabus reads as follows:

"An entry under a lease for a term of years at an annual rent, void for any cause, and payment of rent under it, creates a tenancy from year to

year upon the terms of the lease, except as to its duration."

As above stated it is urged that in the instant case there was a tenancy from year to year, and that therefore Nolan is entitled to recover for the remainder of the year from the date of surrender or the date to which rentals were paid. It must be conceded that when the Amusement Company went into possession under this void lease it became a tenant, but the issue is as to the term of the tenancy.

The last word spoken by the court of last resort in this jurisdiction upon this subject is *Lithograph Building Co.* v. *Watt,* 96 Ohio St., 75, which is decisive of the issue here. The 6th paragraph of the syllabus reads as follows:

"Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, dependent upon the terms as to payment of rentals, and the lessor, by instituting an action for accrued rentals or for the purpose of ejecting the lessee for nonpayment of rentals, is not thereby estopped to question the validity of such lease."

In the above it is not held differently from the rule as stated in *Railroad Co.* v. *West,* above noted, but the rule is amplified somewhat in holding that the term or period of the tenancy created by entering into possession under a void lease is to be determined by the periods fixed for the payment of rentals.

The foregoing, therefore, determines the issue in the instant case, because the lease provides that the amount of the rentals to be paid for the whole

term shall be $2,100, payable fifteen dollars per month on the first day of each and every month during the first year and forty dollars per month during the balance of said term, commencing on the first day of March, 1915. Therefore the rentals were clearly and unmistakably payable monthly on the first day of each month, and the lessee having gone into possession it created a tenancy from month to month. It is urged that the court erred in its instruction to the jury upon this issue, as follows:

"While the lease is not valid for a term of five years, it is in law effective and binding for a period of one year if the premises were occupied and used by the defendants."

In view of the above case of *Building Co. v. Watt* the conclusion must be that the tenancy was one from month to month, and the trial court therefore erred in this instruction.

The next issue to be determined is whether or not Nolan is entitled to recover the cost and expense of restoring his building to the same condition as store rooms that it was in before the alterations were made.

In that regard the lease provides that the lessee shall have the right to alter the building and make it suitable for the purposes of a moving picture theater. It is also provided that "at the expiration of this lease said premises shall be surrendered in as good condition as they now are in."

Numerous cases were cited to the effect that where a lease provides that the premises shall be restored to the same condition as they were in at the beginning of the term, the lessor is entitled to

a restoration of the building as it was before any alterations were made. The cases, however, are not in full accord on that proposition. Some courts have gone far beyond and held that even though a lease provides that premises shall be restored to the same condition as before changes were made the tenant is not obliged to restore them to the same condition but to leave them in as *good* condition.

The case of *McGregor* v. *Board of Education,* 107 N. Y., 511, is somewhat helpful. The plaintiff leased to the Board of Education certain premises which had been occupied as a dwelling house and which were to be used for the purposes of a public school, and the necessary alterations were made in the building, by agreement; the lessee covenanted to make them and to surrender the premises at the expiration of the lease in the *same* condition as they were at the beginning of the term, reasonable use and wear thereof by the public school and damage by the elements only excepted. The lessee changed the dwelling into a schoolhouse by removing partitions, etc. It was, in fact, a dwelling house changed into a schoolhouse, and in the instant case a store room, or rooms, was changed into a moving picture theater. At the expiration of the lease it became a question as to whether or not the lessee should be required to restore the building to its former condition, or as it was at the beginning of the term, and it is provided in the latter part of the syllabus as follows:

"*Held,* that defendant was not bound to restore the premises to their former condition as a dwell-

ing-house; but that the evidence showed other damages, and the question as to whether or not they resulted from a reasonable use of the premises for school purposes was one of fact, and a submission of the same to the jury was proper."

The proposition of interest in the above case is that the court held that the lessee was not bound to restore the premises to the *same* condition, that is, of a dwelling house, but to place them in as *good* condition, though the lease provided that the premises be restored to the same condition.

Another case well in point is *In re International Milling Co.,* 175 Fed. Rep., 308, the syllabus of which provides as follows:

"Where, at the commencement of a lease for a term of years, the premises were changed from a loft and office building to a factory, the expense of alterations necessary to place them in their original condition after surrender on the tenant's bankruptcy was not 'repairs,' for which the landlord was entitled to claim under the lease, providing that the tenant shall make all inside repairs and alterations at his own expense."

In this case the lease provided that the tenant should take good care of the premises, make all inside repairs and alterations at his own expense, and at the end of the term surrender said premises in good order or condition. The court refused to allow a claim based upon estimates for rebuilding that part of the premises which had been changed.

Well in point with the foregoing is the decision in the case of *Perry* v. *J. L. Mott Iron Works Co.* (*207* Mass., 501), 93 N. E. Rep., 798. In that case the tenant was authorized under the pro-

visions of the lease to make permanent alterations in the building to accommodate his business, to remove same at the end of the term providing he left the premises in good repair; the tenant decided to surrender the building as it was, that is, with the alterations, and it is held in the first paragraph of the syllabus as follows:

"Where trade fixtures, so constructed as to constitute an addition to the premises, were built by the lessee with the consent of the lessor and added nothing to the value of the premises, and their removal was necessary to let the premises to another lessee, the lessor could not recover from the lessee the cost of removal to adapt the premises to other uses, and the rent for the time required in doing the work, unless the lease gave the right."

The foregoing is supported in principle by *Pfister & Vogel Co.* v. *Fitzpatrick Shoe Co.,* 197 Mass., 277, 83 N. E. Rep., 878, so that the strong weight of authority is that where substantial alterations and changes which become part of a building are made in or upon the premises, which are of substantial or *permanent* character and are made in pursuance of the provisions of the lease or with the consent of the landlord, no recovery can be had for the cost of restoring such premises, and the reason is obvious, because alterations of a permanent character would reasonably be presumed to remain as made, unless otherwise provided.

What is the situation here? Nolan entered into a contract by which he consented to the conversion of the building into a picture show auditorium. He lived in the second story of this property; he

was no doubt about there much of the time and observed the progress of the changes and alterations being made, and knew just what was being done.  He made no complaint because he had agreed to it, and therefore had no reason to complain; he sold one of the windows which was eliminated by the alterations and received in consideration therefor the sum of $55; he stood by, at least consenting, during the progress of the work.

Now he seeks to recover for the restoration of this building to store rooms, as it was before the changes were made, and in so doing asks to recover for the window which he sold.  It is not disputed that the premises were left in as *good* condition as they were in at the beginning of the term, possibly better, but the lease is peculiar in its wording, and, had the landlord intended to require the tenant to restore the premises to their former condition as store rooms, how easy it would have been to have so provided in the lease; but in making the same the lessor was content to provide that they be placed in as "good" condition as they were at the beginning of the term; and the premises, so far as the record discloses, were left in as good, possibly better, condition.  Nolan's conduct clearly indicates that he did not expect more; or expect that the premises were to be restored to their condition before the alterations were made.

It is urged that the court erred in its charge upon this proposition, as follows:

"Now, gentlemen, you will look to the evidence on this claim of the plaintiff and determine

whether or not this property was in as good con-
dition as it was at the time it was occupied by
the defendants, and in considering this you should
take into consideration all of the facts surround-
ing the parties at the time this lease was entered
into; the purpose for which the building was to be
used; the purpose for which it was used before
this time, and the purposes for which it would be
available after this time.

"Was it in as good condition when they left it
as it was when they went into possession of it;
if you find from a preponderance of the evidence
that these store rooms were not in as good con-
dition as they were when the defendants went into
the occupation of them, then the plaintiff would be
entitled to recover upon this second cause of action
and the measure of his recovery would be the
difference in the value of the property at the time
he leased it to them, and the time at which they
left it, or the amount of money that it would take
to place it in the same condition."

By the foregoing instruction the court prac-
tically left it to the jury, as a question of fact, to
construe the above part of the contract or lease in
question, whereas it was the duty of the court;
therefore the instruction was erroneous; and as
between landlord and tenant it is a well-established
principle of law that where a necessity for the con-
struction of a lease arises it must be construed most
favorably to the lessee.   24 Cyc., 915, and note 70;
2 Kerr on Real Property, Section 1242, and 1 Mc-
Adam on Landlord and Tenant, 735.

Therefore, resting this case upon the provisions
of the lease, it must be held, first, that the tenancy

was one from month to month, not from year to
year, and Nolan can not recover the rentals from
the date of surrender to the expiration of the year,
and the instruction upon that issue was erroneous;
second, that it was the duty of the court to con-
strue the terms of said lease, concerning which an
issue was made; and, third, that it was not the
duty of the lessee to place the premises in the same
condition as before the alterations were made, but
in as good condition as at the beginning of his
term.   Nolan can not therefore recover for the
restoration of the building to its original con-
dition or as it was before the alterations were
made, nor can there be a recovery for the removal
of the stairway.

There are other assignments for error which do
not affect the substantial rights of plaintiffs in
error, and it is not therefore necessary to discuss
them here.   For errors in the charge, and the
reasons above given, the judgment is reversed.

*Judgment reversed.*

POLLOCK and METCALFE, JJ., concur.