Walnut Hills Investment Corp., Appellant, *v.* Goodman, Appellee.*

(No. 8495—Decided November 24, 1958.)

*Messrs. Dolle, O'Donnell, Cash, Fee & Hahn,* for appellant.
*Messrs. Goodman & Goodman,* for appellee.

Matthews, J.  The defendant, appellee herein, was a lessee of a storeroom owned by the plaintiff, appellant herein, located at 951 E. McMillan Street in the city of Cincinnati, under a lease which would expire on February 1, 1954.  This lease did not include the basement underneath the storeroom.  The defendant wanted to renew the lease on the storeroom, in which he was conducting a retail clothing store, and he also desired to lease the basement and make the appropriate changes therein, so that he could thereby enlarge his retail store by extending it into the basement, and so informed the plaintiff.

The plaintiff was willing to renew the lease on the storeroom and also to lease the basement, and it seems that they had fully agreed upon most and probably all the terms including the rental and the duration of the lease from February 1, 1954, to January 31, 1957.  Plaintiff's attorney prepared a written lease, which was sent to the defendant for execution.  The rent reserved was $3,600 per year, payable monthly until June 30, 1955, and thereafter $4,800 per year, payable monthly.

The lease as submitted gave the defendant the privilege of

_____
*Motion to certify the record overruled, March 4, 1959.

making the changes which he might desire for conducting a retail clothing store.

The parties never executed this written lease, but defendant took possession of the basement at once and proceeded to prepare plans, with the plaintiff's consent in September, 1953, in anticipation of entering into this lease to begin on February 1, 1954, for remodeling it in anticipation of conducting the store therein. Both parties seemed confident the relation of lessor and lessee would be established according to their oral agreement. Knowing that a building permit would be required, the defendant submitted the plans to the building commissioner of the city of Cincinnati, and was told by him that no permit would be issued to remodel for a store in the basement, because the basement did not have the required exits.

Upon receiving this ruling, both parties considered whether the required exits could be provided. The building, a part of which was the subject matter of these negotiations, was built on, or almost on, the property line and the required exit could not be supplied on the plaintiff's land, but the adjoining property was vacant, and it was suggested by one or the other of the parties that perhaps a strip of this property of sufficient width to furnish a passage to McMillan Street could be leased, and thereby comply with the ruling of the building commissioner. Much time was consumed in fruitless negotiations with the adjoining owner.

It is clear that by October 1, 1954, the plaintiff had abandoned all hope of securing an easement of exit from the adjoining property owner, but was still demanding that the defendant sign and return the written lease which had been sent to him. It appears from its letter of October 1, 1954, which it mailed to defendant, and from its letter of April 25, 1955, that the original purpose of a written lease to expire on December 31, 1957, had, perforce, been abandoned, and that another relation had been created by reason of the defendant's occupation of the basement. The plaintiff suggested that the defendant should pay $65 per month, commencing on February 1, 1954, and asked him to pay $1,040, for which amount he was in default on that basis, and that he should pay $65 per month thereafter. The defendant did not respond to these letters, but continued to occupy

the basement. By letters thereafter, the plaintiff demanded payment of monthly rental of $65, as it accrued, but the defendant failed to pay as requested.

Shortly after the defendant took possession, he placed shelving against the walls of the basement, and also placed in the basement dispay cases and other equipment and merchandise of a value of from $5,000 to $6,000 as estimated by defendant. It does not appear how long these particular articles remained in the basement, but it does appear that the defendant had exclusive possession of the basement until he vacated it in response to a notice to quit served on him February 9, 1956.

This action by the owner seeks to recover $1,635 for the use and occupation of the basement from August 1, 1954, to February 1, 1956. It alleges that the reasonable rental value thereof was $65 per month.

By amended answer, the defendant denied the allegations of the petition, and by way of cross-petition alleged that on or about January 1, 1954, the plaintiff agreed with defendant to obtain an exit to the basement, and that, with the consent of the plaintiff he entered into possession and that he was put to great expense in moving goods, wares and merchandise into said basement, constructing shelving, display cases, tables and decorating.

The defendant alleged that the plaintiff failed to "live up to his said agreement" and that he was damaged not less than $10,000, for which amount he prayed judgment. The plaintiff denied the allegations of the cross-petition.

At a trial to the court without a jury the court found that neither party had proved a cause of action against the other and, therefore, dismissed both the petition and cross-petition. Both excepted. The plaintiff appealed. The defendant did not.

The evidence at the trial established the facts as hereinbefore set forth. There was evidence which tended to prove that the execution of a lease was conditional upon obtaining a building permit to do the remodeling necessary to enable the defendant to conduct a retail clothing store in the basement, but there was no evidence that the plaintiff guaranteed, or promised, to obtain such a permit. The defendant withheld signing the written lease submitted to him by the plaintiff, awaiting the issuance

of the permit, and both parties contemplated that their rights and duties would be integrated into the written lease. Until that was done, we must look to their conduct to determine their intent to bind themselves in the interval before a building permit had been obtained. In other words, we are to determine the terms of this agreement preliminary to the execution of the lease.

In 51 Corpus Juris Secundum, at page 519, Section 12, it is said:

"A landlord and tenant relationship may arise from an entry into possession pending negotiations for a lease which are not consummated."

And, at page 535, Section 28:

"So too a lease may provide that the term is to commence on the happening of a stated event, * * * but if the event on which the commencement of the term is clearly conditioned does not occur no tenancy commences."

When defendant took possession of this basement with the consent of plaintiff, without any lease for a definite term, he became a tenant at will, by operation of law, and it is clear that he was to be charged no rent for that period for the first eighteen months, unless sooner terminated by notice to the contrary.

As long as the parties continued to anticipate that a building permit would be obtained, and a lease executed, as contemplated, the defendant was justified in continuing to occupy the basement without charge, unless and until the plaintiff gave notice to the defendant that his occupancy, rent free, was terminated and, that thereafter it would be on different terms. This occurred on April 25, 1955, when the plaintiff notified defendant that the rental would be $65 per month and demanded payment, and thereafter continued to demand that amount each month. It is true that the plaintiff coupled this demand with the unjustified demand that the defendant pay that monthly rental from the beginning of his occupancy. Of course, the demand could not be given a retroactive operation under the circumstances, but such attempt does not vitiate the demand for rent to accrue in the future. At no time did the defendant question the reasonableness of the charge. His contention was, and is, that un-

der the circumstances he was entitled to occupy the premises free of rent. We hold that after receiving the letter of April 25, 1955, the defendant should have known that the freedom from rent provision in the contemplated lease no longer was in effect and that if he continued to occupy the basement, it would have to be on the terms dictated by the plaintiff. 32 American Jurisprudence, 800, Section 950. There was no issue of fact presented for decision of the trier of the facts.

We, therefore, hold that the plaintiff is entitled to recover from the defendant rent at $65 per month from April 25, 1955, to February 1, 1956, when defendant vacated the basement.

The judgment is reversed, and this court will enter the judgment in favor of the plaintiff for the amount indicated, which the trial court should have rendered. See 4 Ohio Jurisprudence (2d), 583, Section 1209; *In re Estate of Murnan,* 151 Ohio St., 529, 87 N. E. (2d), 84, and *Meyer* v. *Dutro,* 102 Ohio App., 195, 139 N. E. (2d), 476.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.