## Manifold v. Schuster
*[Cite as 2 AOA 192]*

*Case No. 702*
*Highland County, (4th)*
*Decided April 12, 1990*

R.C. 1335.04
R.C. 1335.05
R.C. 1923.02
R.C. 1923.04
R.C. 5321.01

*Charles H. Wilson, Jr., West Union, Ohio, for Appellants.*

*Fred J. Beery, Hillsboro, Ohio, for Appellee.*

STEPHENSON , J.

This is an appeal from a judgment, granting restitution of premises and money damages, entered by the Municipal Court of Hillsboro, following a bench trial, in favor of Earl S. Manifold, plaintiff below and appellee herein, against Robert and Lorraine Schuster, defendants below and appellants herein. Appellants assign the following error:

"Defendants-Appellants state that there was error in the proceedings and judgment below, prejudicial to them, in that the judgment and final orders of the Hillsboro Municipal Court are contrary to law and against the manifest weight of the evidence."

The facts pertinent to this appeal are as follows. Appellee placed an ad in a local paper offering to rent his farm, connected outbuilding and a house. Appellants responded and reached an oral agreement to rent the farm and house for a period of three years. Appellants insisted upon a three year lease, in part, because of the cost associated with moving farm equipment and placing a greenhouse on the rental property. Appellee was also amenable to such a term because he was looking for a long term tenant. Rent on the house was fixed at $175 per month, payable in advance, while the acreage was to be farmed "on the halves." Appellee instructed his counsel to prepare a written lease reflecting the parties' agreement and authorized the appellants to take possession prior to the execution of this document.

Appellants moved in during the late fall of 1986. At that time, they erected a greenhouse as had been discussed by the parties. However, the written lease was never executed. At trial, appellee indicated that shortly after appellants moved in and began their farming operation, he became dissatisfied. The initial problem began over a complete set-off for the first month's rent proposed by appellants in exchange for their replacing a wire on the clothes dryer. Appellee still wanted to rent to them but not on a three year term. Appellee testified that he considered the tenancy to be month to month.

Appellants framed the premises for the 1987 crop year and upon notifying appellee of the yields and relative profits in November of 1987, appellee informed them he had leased the farm to one Marion Hartman. Prior to this notification, appellants had planted a small winter wheat crop for 1988. Appellants admit that, thereafter, they stopped paying rent on the house in January 1988 through date of trial on July 7, 1988. Appellee testified at trial that appellants were usually two or three months behind in their rental payments on the premises.

On June 13, 1988 appellee filed a complaint in forcible entry and detainer. Appellants, appearing *pro se*, filed an answer and a counterclaim seeking damages of $3,000 for breach of the lease. The matter ultimately came on for trial to the court with appellee being represented by counsel and appellants appearing *pro se*.

On July 7, 1988, the matter was tried to the court which found that the oral lease was unenforceably by virtue of the statute of frauds. The court further made the following oral findings of fact:

"So in light of that the Court makes a finding that *it was a month to month tenancy.*
* * *
The Court further finds that the Defendants had notice that the new tenant was coming in November or December.

* * *

The Court further finds that there's no evidence on the counterclaim regarding defendants' damages. The court finds that the plaintiff is entitled to restoration of premises." (Emphasis added.)

The court granted judgment for restitution of the premises to appellee together with damages for unpaid rent. The court further ordered that the unharvested wheat growing on the property would be harvested by a third person and the net proceeds therefrom would be divided equally between the parties.

On their assignment of error, appellants argue that the court erred both in holding the oral tenancy unenforceable under the statute of frauds and in finding that the resultant tenancy was month to month rather than year to year. We disagree.

Ohio law provides that no lease shall be made, and no action shall be brought upon a lease agreement, unless the lease is in writing and signed by the party to be charged therewith. R.C. 1335.04 & 1335.05. The evidence being uncontroverted that no written lease, or memorandum thereof, was ever executed, any oral agreement by the parties in the cause *sub judice* was properly held unenforceable.

Appellants contend, however, that the parol lease was taken out of the statute of frauds by virtue of partial performance citing, *inter alia, Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St. 2d 282. However, in *Delfino*, the court stated as follows:

"The fraud against which the courts grant relief, notwithstanding the statute of frauds, consists in a refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury or made some irretrievable change of position, especially where the defendant has secured an *unconscionable advantage,* and not in the mere moral wrong involved in the refusal to perform a contract which by reason of the statute cannot be enforced. When one party induces another, on the faith of a parol contract, to place himself in a worse situation than he could have been if no agreement existed, and especially if the former derives a *benefit* therefrom at the expense of the latter, and avails himself of his legal advantage, he is guilty of fraud, and uses the statute for a purpose not intended-- the injury of another--for his own profit." Id. at 287-288 (emphasis added).

On the basis of that language from *Delfino*, this court recently held, in *Heiss v. Gragg* (October 30, 1989), Ross App. No. 1560,

unreported, that the doctrine of partial performance will not take a parol agreement out of the statute of frauds without a showing of detrimental reliance by the party arguing partial performance, or an unconscionable advantage obtained by the party raising the statute. Appellants herein have not argued in their brief, and we cannot determine, any "unconscionable advantage" obtained by appellee or how appellants have been induced by appellee to rely on the parol lease to their detriment.

Indeed, testimony at trial revealed that appellants were usually two or three months behind in rent payments and, by the time of trial, appellee had not received any rent for six months. Moreover, at trial appellant Robert Schuster, revealed that certain improvements constructed by them, on the premises, were being dismantled and taken with them. As aforesaid, the trial court further ordered that the net proceeds from unharvested crops growing on the premises would be split between the parties.

Under these circumstances we cannot hold that appellee has obtained an "unconscionable advantage" or that appellants have been misled to their detriment. Accordingly, on the bases of *Delfino*, supra, and *Heiss*, supra, we hold that there was insufficient partial performance to take the parol lease out of the statute of frauds.

The law provides that a tenancy at will is created when possession of the premises is taken under an invalid lease. See Restatement of Law 2d, Property (1976), 82-83, section 2.3. and comment A. Upon payment and acceptance of rent, this tenancy at will then converts to a periodic tenancy. *Id; Sizzi, Inc. v. Atlantic Dept. Stores, Inc.* (1976), 49 Ohio App. 2d 65, 70. Having determined that the tenancy is periodic in nature, it must then be determined what that "period" is. Appellants argue that if a periodic tenancy did, in fact, exist then the period is year to year. We disagree.

In *Lithograph Building Co. v. Watt* (1917), 96 Ohio St. 74 at paragraph six of the syllabus, the Supreme Court held as follows:

"Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, *dependent upon the terms as to payment of rentals,* and the lessor, by instituting an action for accrued rentals or for the purpose of ejecting the lessee for non-payment of rentals, is not thereby estopped to question the validity of such lease." (Emphasis added.)

In the same vein, the court in *Wineburgh v.. Toledo Corp.* (1932), 125 Ohio St. 219, in paragraph one of the syllabus, stated as follows:

"A defectively executed lease for *a term of five years upon monthly rental creates a tenancy in the lessee from month to month;* and where the tenants occupying under such lease vacates the premises at the end of a month, after fully prepaying the rentals then due, he is not liable to the lessor for the rental installments accruing after such vacation, in an action at law based upon such defectively executed lease. *(Richardson v. Bates,* 8 Ohio St., 257, approved and followed.)" (Emphasis added.)

Whatever other arrangements there might have been for payment after the harvesting of crops, there is uncontroverted evidence from both parties that, either by agreement or course of dealing, rental payments in the amount of $175.00 per month were to be paid to appellee. Moreover, as stated previously, appellee testified that he believed the tenancy was "month to month."

In reviewing a lower court's judgment we must presume findings by the trier of fact to be correct and we cannot reverse a judgment supported by some competent and credible evidence going to all the essential elements of a case. *Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 at the syllabus; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77, 80; *Karches v. city of Cincinnati* (1988), 38 Ohio St. 3d 12, 19. In that the syllabus language of *Lithograph Building Co.* and *Wineburgh* hold that the term of a periodic tenancy is dependant upon payment of rentals, and there being sufficient evidence presented at trial both as to rental payments and the appellee's understanding of the period of the tenancy, to support a finding of the trial court that a month to month tenancy existed, we decline to accept appellant's argument that the court erred in that regard.[1]

As a final matter, we turn to consider whether the judgment below properly granted restitution of the premises to appellee under the forcible entry and detainer provisions of R.C. Chapter 1923. Under R.C. 1923.02(A)(2), a landlord may bring an action against any tenant in possession, under an oral tenancy, who is in default of rental payment. As a prerequisite to bringing an action in forcible entry and detainer, a landlord must give the so called "3 day notice" required by R.C. 1923.04(A):

"(A) Except as provided in division (B) of this section, a party desiring to commence an action under this chapter, shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, *three or more days before beginning the action,* by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises from which the defendant is sought to be evicted.

"Every notice given under this section by a landlord to recover residential premises shall contain the following language printed or written in a conspicuous manner: 'You are being asked to leave the premises. If you do not leave, an eviction action may be initiated against you. If you are in doubt regarding your legal rights and obligations as a tenant, it is recommended that you seek legal assistance.'"

Appellants admit to receiving such notice for purposes of vacating the farmhouse, but argue such notice was never given to vacate the farm itself. As aforesaid, the trier of fact made a finding that sufficient notice was given appellants that a new tenant would be taking possession.

Therefore, it must be determined whether such finding was against the manifest weight of the evidence.

At trial, appellant gave the following testimony:

"MR. SCHUSTER: When I finished hauling the corn, the last crop I harvested last fall, I called Mr. Manifold that evening and he told me that he rented the farm. . . . And then he told me that he cash rented it to someone else because he just didn't want to take the chance or obligation anymore."

Appellee gave similar testimony:

"Q. O.K., when did you end Bob's use of the farm? The farming operation.

"A. In the fall, last fall.

"Q. And you arranged for Marion Hartman to do the work?

"A. That's right.

"Q. And did you notify Bob about it?

"A. Yes I did, as soon as the arrangements were made.

* * *

"Q. When did you start talking to Bob or Lorraine about the next years farming operations?

"A. It was about the same time that he called and reported what his harvest had been. I would say it was probably in the first part of December."

The record does not reveal that any written notice was given in the fall of that year. Thus, it must be assumed that the trial court based its finding in this regard on the foregoing testimony.

As set forth previously, R.C. 1923.04(A) specifies only three methods by which a landlord can provide the required notice to a tenant. These include certified mail, physically handing a written copy of the notice to the tenant or leaving such notice either at his usual place of abode or at the subject premises. Because the statute does not provide for oral notice over the phone, we hold that the conversation between appellee and appellants, following the harvest, did not constitute proper notice under the statute. If the oral notice over the phone did not constitute proper statutory notice, then we must determine what legal significance, if any, is to be attached to appellee's actions.

In effect, appellants argue that appellee, by his actions, breached the lease and effected their wrongful eviction. In the recent case of *Foote Theater, Inc. v. Dixie Roller Rink, Inc.* (1984), 14 Ohio App. 3d 456, 457-458, the court, citing *Liberal Savings & Loan Co. v. Frankel Realty Co.* (1940), 137 Ohio St. 489, 498-499, stated the elements for eviction as follows:

"Actual eviction involves expulsion or exclusion from the demised premises; constructive eviction, surrender of possession by the tenant on justifiable grounds. The distinction between the two kinds of eviction is accurately and fully explained in 2 Tiffany Landlord and Tenant, 1263, Section 185(d) from which we quote: 'In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises. In case of an actual dispossession of the tenant, an "actual eviction," no question can arise in this regard, but when there is merely an interference with his possession and enjoyment, it is necessary that the tenant relinquish possession of the premises in order that there be a "constructive eviction," the theory being that the acts of interference by the landlord compel the tenant to leave, and that he is thus in effect dispossessed, though not forcibly deprived of possession. As has been remarked, "the proposition that there can be retention of demised premises and an eviction are logically and legally contradictory."' *So long as the tenant remains in possession he cannot successfully maintain that he has been constructively evicted.*"

Despite his having told appellants that the farm would be leased to another party the following spring, the appellant's were neither expelled from the premises nor compelled to leave by appellee. Thus, there was no wrongful actual eviction or constructive eviction. Furthermore, because the periodic tenancy was month to month, appellee did not breach any duty to appellants by leasing the property to another party. While the evidence at trial was unclear as to when the new tenant would be taking possession of the farm, it is clear that it would not happen for some months. At common law[2] the appellee can terminate a month to month tenancy by giving notice one month in advance. 50 Am. Jur. 2d, Landlord and Tenant, 94 Sec. 1207. Some authority in Ohio would seem to suggest that notice to terminate need not necessarily be given one month in advance. *See* 65 O. Jur. 3d Landlord and Tenant, Sec. 77, 114-115. In any event, appellee herein was not required to give notice of termination to appellants until thirty-one days before the new tenant would take possession the following year.

Therefore, no real legal significance can be assigned to the telephone conversation between the parties in December of 1987. Because the term of the tenancy was month to month, appellee was free to terminate such tenancy whenever he chose upon giving one month's notice. Because neither the new tenant nor appellee physically expelled appellants from the premises, or constructively evicted them, there was no wrongful eviction or breach of the lease. Appellee was merely giving advance courtesy notice that the lease would be terminated the following year. Accordingly, appellants were not justified in their refusal to pay rent for the ensuing six months and their failure to do so breached the lease.

Finally, we address the sufficiency of the statutory "3 day notice" served on appellants prior to the commencement of this cause, a copy of which is attached to appellee's complaint. Appellants admitted receipt of such notice at trial and we must now insure that it satisfies R.C. 1923.04. After examining such notice, we hold that it complies with the law. It contains the statutory language required by R.C. 1923.04(A), it was served more than 3 days before the action was commenced, it identifies the lands as well as the house at the farm and appellants admit to having received it. Appellee has thus satisfied all prerequisites for restitution of the premises.

On the basis of the foregoing, appellants' assignment of error is overruled and the judgment affirmed.

*Judgment affirmed.*

GREY, J., Concurs In Judgment & Opinion:
HARSHA,J., Dissents with Opinion:

HARSHA, J., Dissenting:

I respectfully dissent. In applying the statute of frauds to the oral agreement of the parties, the trial court found in essence that appellants were mere tenants at will, subject to removal at the appellee's whim. As stated by the Supreme Court of North Carolina in *Kent* v. *Humphries* (1981), 281 S.E. 2d 43, "it seems patently unfair to us that a tenant who takes under a lease void by operation of the statute of frauds, but who then pays rent as it comes due periodically, should have only the barest of legal rights as a tenant at will." I agree. Most modern authorities would find a periodic tenancy where entry is made under a lease void by the statute of frauds when the tenant tenders and a landlord accepts rental payments without objection.

The Restatement (Second) of Property section 2.3, *Effect of an Invalid Lease* provides:

"A lease made invalid by the statute of frauds will be given no effect unless:

"(1) possession is taken, in which case a tenancy at will is created;

"(2) possession is taken and rent is paid and accepted as provided under the lease, in which case, without more, a periodic tenancy is created with all the terms of the lease except duration; or

(3) the parties to the lease undertaken substantial performance which are clearly referable to the terms of the lease, in which case the lease is given full effect.

While not in full accord with the Restatement, the Ohio Supreme Court in *Lithograph Building Co. v. Watt* (1917), 96 Ohio St. 74, 88, held that "[p]ossession taken and rent paid under a parol lease for years creates a tenancy from year to year." See also, *Moore v. Harter* (1902), 67 Ohio St. 250, 255, and *Winburg v. Toledo Corp.* (1932), 125 Ohio St. 219, 222. I am aware of the holding in *Walnut Hills Investment Corp. v. Goodman* (1958), 109 Ohio App. 106, stating that such a situation creates a tenancy at will. However, I would not adopt its holding, finding the earlier cases to be

controlling and the Restatement's position to be more persuasive.

It is clear in this case that appellants took possession of the house and *farmland* under an oral agreement for three years, notwithstanding the fact that house rental was due in monthly installments. Rental payments for both the house and the farmland were tendered and accepted. Appellants erected a greenhouse with appellees' knowledge and consent. Appellants planted their 1988 wheat crop prior to receiving notice that the farmland had been rented to someone else.

Under these circumstances neither the statute of conveyances nor the statute of frauds should be applied to the effect that a tenancy at will is created. Under the circumstances of this case and the holding in *Lithograph, supra,* a periodic tenancy was created. The period of the tenancy is determined by the interval between rental payments. Since the proceeds from farming on the halves were paid on an annual basis, I would hold that the tenancy was from year to year. It makes no legal or economic sense to find that the farmland was leased on a month to month basis, notwithstanding monthly payments for the residence

Accordingly, judgment in favor of plaintiff-appellee was error as matter of law and should be reversed.

---

[1] Implicit in appellant's argument that the tenancy was from "year to year" is the contention that upon taking possession of the premises under an invalid three year lease, the tenancy converted to a "year to year term." Such argument was previously rejected in the case of *Rex Amusement Co. v. Nolon* (1918), 11 Ohio App. 318, 324 where the court reasoned as follows:

"As above stated it is urged that in the instant case there was a tenancy from year to year, and that therefore [landlord] is entitled to recover for the remainder of the year from the date of surrender or the date to which rentals were paid. It must be conceded that when the [tenant] went into possession under this void lease it became a tenant, but the issue is as to the term of the tenancy.

"The last word spoken by the court of last resort in this jurisdiction upon this subject is *Lithograph Building Co. v. Watt,* 96 Ohio St. 75, which is decisive of the issue here. The 6th paragraph of the syllabus reads as follows:

'Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, dependent upon the terms as to payment of rentals, and the lessor, by instituting an action for accrued rentals or for the purpose of ejecting the lessee for

nonpayment of rentals, is not thereby estopped to question the validity of such lease.'

"In the above it is not held differently from the rule as stated in *Railroad Co. v. West,* above noted, but the rule is amplified somewhat in holding that *the term or period of the tenancy created by entering into possession under a void lease is to be determined by the periods fixed for the payment of rentals.*

"The foregoing, therefore, determines the issue in the instant case, because the lease provides that the amount of the rentals to be paid for the whole term shall be $2,100, payable dollars per month on the first day of each and every month during the first year and forty dollars per month during the balance of said term, commencing on the first day of March, 1915. Therefore the rentals were clearly and unmistakably payable monthly on the first day of each month, and the lessee having gone into possession it created a tenancy from month to month. It is urged that the court erred in its instruction to the jury upon this issue, as follows:

'While the lease is not valid for a term of five years, it is in law effective and binding for a period of one year if the premises were occupied and used by the defendants.'

"In view of the above case *Building Co. v. Watt* the conclusion must be that the tenancy was one from month to month, and the trial court therefore erred in this instruction." (Emphasis added.) *Id.* at 324-325

[2] For residential premises, the common law has been replaced by R.C. Chapter 5321. Therein a periodic tenancy is terminated as follows:

"§5321.17 *Termination of periodic tenancies.*

(A) The landlord or the tenant may terminate or fail to renew a week-to-week tenancy by notice given the other at least seven days prior to the termination date specified in the notice.

(B) The landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the other at least thirty days prior to the periodic rental date.

(C) This section does not apply to a termination based on the breach of a condition of the rental agreement or the breach of a duty and obligation imposed by law."

While the results would be similar, the case sub judice is not governed by this statute because it falls outside the purview of the "residential premises" toward which this statute is defined by R.C. 5321.01(A), (B) & (C)(6):

"As used in Chapter 5321. of the Revised Code:

"(A) 'Tenant' means a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others.

"(B) 'Landlord' means the owner, lessor, or sublessor of residential premises, his agent, or any person authorized by him to manage the premises or to receive rent from a tenant under a rental agreement.

"(C) 'Residential premises' means a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances therein, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant. 'Residential premises; does not include: * * *

"(6) Farm residences furnished in connection with the rental of land of a minimum of two acres for production of agricultural products by one or more of the occupants." (Emphasis added.)