DECISION AND JUDGMENT ENTRY
This matter is before the court following the November 10, 2000 judgment entry of the Toledo Municipal Court which granted judgment in favor of appellees, Edgbarton Investment Co., LLC, and Toledo Metalizing Co., and against appellants, Target Expediting Inc., et al.[1]
("Target"). For the reasons that follow, we affirm the decision of the trial court.
The facts surrounding this action's history are lengthy and involved. In March 1987, Toledo Metalizing Co. entered into a commercial lease agreement with Calbur Enterprise, Inc., for property located at 40 E. Laskey Road, in Toledo, Ohio. The lease term was for one year and the initial rental rate was $1,500 per month. Thereafter, the tenancy continued on a month-to-month basis. At some point during the first few years of the tenancy, Calbur was dissolved and Target,[2] already in existence at that time, began making the monthly rental payments. During the period of the written lease agreement, the rent gradually increased and in March 1988, the rent increased to $2,000 per month for the following year. Eventually the rent was increased to $2,250 per month.
In June 1998, Donald L. Solomon, owner of Toledo Metalizing, sold the property to Edgbarton, a related company. At that time, Edgbarton increased the rent to $3,000 per month. Target paid the $3,000 for one month and then reduced its payments back to $2,250 per month.
On October 6, 1998, Edgbarton faxed Target a letter notifying it that it was $1,500 deficient in rent payments for the months of July and August. On November 12, 1998, Edgbarton again notified Target that it was deficient, this time in the amount of $3,000 for the months of August through November. Edgbarton threatened to "take action" if a check was not received by November 16, 1998. Thereafter, on November 16, 1998, Edgbarton sent Target a letter notifying it of its intent to terminate the tenancy effective December 16, 1998. The letter was returned "unclaimed".
Target failed to vacate the premises by December 16, 1998, and on December 18, 1998, Edgbarton served Target with an eviction notice. On December 23, 1998, Edgbarton filed a landlord's complaint for possession of the premises and for past due rent in the amount of $3,750, plus $100 per day from December 15, 1998, until paid. Edgbarton also requested reimbursement in the amount of $708.25 for the pumping and removal of fuel in order to dispose of an underground petroleum tank. Lastly, Edgbarton requested "additional costs and expenses" which could be determined only after Target vacated the premises.
On January 25, 1999, Target filed an answer, counterclaim, and third-party complaint. Its affirmative defenses were that (1) it had a "right of first refusal on option to purchase the property"; (2) Edgbarton had accepted the lower rental amount; and (3) Target was never notified that Edgbarton was the owner of the property. Target counterclaimed that at the time it entered into the lease agreement, it also entered into an option to purchase or right of first refusal of the property in the amount of $200,000. Target argues that such agreement was made in exchange for Target's agreement to make improvements on the property. Target asserts that it spent approximately $100,000 on improvements in reliance and as part performance on the option. In Target's third-party complaint, against Toledo Metalizing, it requests $25,000 damages for the breach of the alleged option to purchase/right of first refusal. Edgbarton and Toledo Metalizing deny the existence of such an agreement.
On May 13, 1999, Edgbarton and Toledo Metalizing filed a motion for summary judgment as to Target's counterclaim and a motion for partial summary judgment as to Target's defenses on the eviction cause. In its motion, appellees argued that the written lease contained no option to buy or right of first refusal and that there was no oral agreement. Appellees also argued that even if there were some sort of discussion regarding the option, which they denied, they argue that it would "run afoul of the Statute of Frauds." Appellees further asserted that Target's claims were not supported by the doctrine of part performance.
The following day, May 14, 1999, Target filed a motion for partial summary judgment as to Edgbarton's first cause of action for possession of the premises. Target argued that (1) Edgbarton's acceptance of partial rent constituted a waiver of its right of forfeiture of the lease for underpaid rent; and (2) Edgbarton failed to give clear advance notice of its intention to require strict compliance with the increased monthly rent and the payment of the accrued arrearages.
On December 10, 1999, the trial court ruled on the parties' motions. It denied Target's motion for partial summary judgment and granted appellees' motion for summary judgment on Target's counterclaim. The court also granted judgment for Edgbarton on its first and second causes of action for possession and unpaid rent. Target timely appealed the trial court's judgment.
On appeal, Edgbarton filed a motion to dismiss arguing the trial court's judgment was not final and appealable. This court agreed,[3]
but determined that the trial court's judgment for possession was properly reviewable. In our November 1, 2000 decision, this court found that:
 "* * * Edgbarton never waived its right to full rental payments, as evidenced by the facsimiles sent to Target concerning the deficiencies each month. Additionally, Edgebarton did not accept any rent for any period of time after the termination date of the tenancy. As such, we find that Edgebarton properly notified Target of its intention to terminate the month-to-month tenancy and, thus, was entitled to summary judgment on its first cause of action." Edgbarton Investment, Inc. v. Target Expediting, Inc. et al. (Nov. 17, 2000), Lucas App. No. L-99-1410, unreported.
During the pendency of the above-quoted appeal, the case had been remanded and was proceeding as to the issues we determined were not yet final and appealable.
On September 21, 2000, Edgbarton, in its pretrial brief, indicated that it had dismissed the "two minor claims," i.e., recovery of the costs associated with the petroleum tank and the unspecified costs. Edgbarton then indicated that all that was left to determine was the calculation of the amount of past rent due and owing.
On September 25, 2000, Target filed a motion for reconsideration of the court's December 14, 1999 judgment dismissing its counterclaim. Target argued that the trial court erroneously applied the summary judgment standard and that there was, in fact, a genuine issue as to whether an option to purchase/right of first refusal existed. Target further noted that because they were before a new judge, reconsideration would allow the court to familiarize itself with the case and correct the identified errors.
At a pretrial conference, held the same day, the parties and the trial court had a discussion regarding whether the predecessor judge had intended to grant summary judgment to the third-party defendant, Toledo Metalizing, because it was not mentioned in the December 10, 1999 judgment. The trial judge indicated that he would make some inquiries of the predecessor judge and review his notes in the hope of clarification. On October 11, 2000, the parties reconvened and the trial judge determined that, based on the notes of the predecessor judge and the arguments of the parties, the issues in the third-party complaint were already determined in the December 14, 1999 judgment. The case then proceeded to an assessment of damages and, on November 9, 2000, the trial court awarded Edgbarton $72,000 for rent due from July 15, 1998 through October 15, 2000 and interest in the amount of $5,283.33. The court further stated: "The court confirmed for the record that the intentions of the October 10, 2000 ruling was to dismiss the defendant's third-party complaint, amended counterclaim and amended third party complaint.[4]
The defendant's request to proceed with a jury was also denied."
Target then filed the instant appeal and asserts the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "DID THE COURT ERR IN GRANTING JUDGMENT IN FAVOR OF THE PLAINTIFF ON ITS SECOND CAUSE OF ACTION (UNPAID RENT)?
 Answer: The Plaintiff and Third-Party Defendant would answer this question negatively and Defendant would answer in the affirmative.
"SECOND ASSIGNMENT OF ERROR
 "DID THE COURT ERR IN GRANTING SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES, ITS COUNTERCLAIM AND/OR THIRD PARTY COMPLAINT?
 Answer: Plaintiff and Third-Party Defendant asserts no and Defendant asserts yes.
"THIRD ASSIGNMENT OF ERROR
 "DID THE TRIAL COURT ERR IN DISMISSING DEFENDANT'S BREACH OF CONTRACT CAUSE OF ACTION IN THE DEFENDANT'S AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT?
 Answer: Plaintiff and Third-Party defendant asserts no and Defendant asserts yes.
"FOURTH ASSIGNMENT OF ERROR
 "DID THE COURT ERR IN DENYING DEFENDANT'S MOTION FOR DEFAULT JUDGMENT FOR PLAINTIFF AND THIRD-PARTY DEFENDANT'S FAILURE TO ANSWER AND/OR RESPOND TO DEFENDANT'S AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT?
"FIFTH ASSIGNMENT OF ERROR
 "DID THE COURT ERR IN REFUSING TO GRANT DEFENDANT'S REQUEST FOR TRIAL BY JURY?"
In its first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of Edgbarton as to its second cause of action, unpaid rent. Target argues that the judgment was erroneous because, in its motion, Edgbarton never requested summary judgment on its complaint. Edgbarton, in opposition, cites to this court's November 17, 2000 decision which determined that while Edgbarton did not request summary judgment on its first cause of action, possession, all the relevant evidence was before the trial court and no material issue of fact remained as to that issue. We then proceeded to find Target's assignment of error not well-taken.
Here, as in our prior opinion, we acknowledge that Civ.R. 56 does not authorize courts to award summary judgment to non-moving parties; however, "`an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law.'" State exrel. Newell v. Cuyahoga Cty. Court of Common Pleas (1997),77 Ohio St.3d 269, 270 n. 1, quoting State ex rel. Cuyahoga Cty. Hosp.v. Bur. of Workers' Comp. (1986), 27 Ohio St.3d 25, 28.
In the instant case Target, in its motion for partial summary judgment as to possession, fully discussed the issue of unpaid rent in its argument that by accepting the lower rent payments, Edgbarton waived its argument as to under paid rent. In our November 17, 2000 decision, this court noted that Edgbarton "never waived its right to full rental payments[.]" Further, during the November 7, 2000 hearing on the assessment of damages (unpaid rent), Target presented no testimony to dispute the testimony presented as to the amount owed.
Based on the foregoing, we find that Target's first assignment of error is not well-taken.
In its second assignment of error, Target contends that the trial court erred in granting summary judgment on its affirmative defenses, counterclaim and/or third-party complaint. Specifically, Target argues that at the time the trial court awarded summary judgment, a genuine issue of fact remained as to the existence of an oral option contract to purchase the property and part performance in reliance thereof. In opposition, Edgbarton contends that the fact that a genuine issue may exist is irrelevant because an option to buy/right of first refusal is subject to the Statute of Frauds and must be in writing.
In reviewing a grant of summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted where there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
R.C. 1335.04 provides:
 "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."
In response to Edgbarton's argument that the alleged agreement was subject to the Statute of Frauds, Target contends that by making improvements on the property in reliance on the alleged option, equity requires that this court apply the doctrine of part performance in order to remove the obligation that the alleged agreement be in writing.
Assuming that there was an oral agreement, in Ohio, the doctrine of part performance will not remove an oral agreement from the Statute of Frauds absent a showing of reliance by the party arguing part performance or an unconscionable advantage by the party raising the statute. Brannanv. Fowler (1995), 100 Ohio App.3d 577, 584, citing Manifold v.Schuster (1990), 67 Ohio App.3d 251, 255; Heiss v. Gragg (Oct. 31, 1989), Ross App. No. 1560, unreported.
Tier v. Singrey (1951), 154 Ohio St. 521, cited by Target, provides insight into the detrimental reliance necessary to invoke the doctrine of part performance:
 "`The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far as to alter his position as to incur an unjust or unconscientious injury and loss * * *.'" Id. at 529, quoting 49 American Jurisprudence, 732, Section 427.
The Ohio Supreme Court further explained that in order to satisfy the doctrine an aggrieved party's performance "must consist of unequivocalacts by the party relying upon the agreement, which are exclusivelyreferable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo." Delfino v. Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282,287. (Emphasis added.) (Citations omitted.) Further, the Delfino court stressed that the operation of the doctrine is strictly limited to prevention of fraud. Id. at 288.
Target's owner, Spicuzza, contends that "the acts of improving the real estate would only have been performed if he had entered into an agreement with Toledo Metalizing Co. giving Target the option or right of first refusal to purchase the property, `when he [Solomon] got ready to sell.'" Upon review of the arguments of the parties, the record, and the relevant case law, we find that the doctrine of part performance does not apply in the instant case. While Target argues that it made improvements to the property in reliance of the alleged option to purchase, there is no evidence that Target agreed to make said improvements in consideration for the option or that the improvements were in any way contemplated at the genesis of the alleged option to purchase/right of first refusal.Delfino, supra. Thus, while Target, specifically, Jim Spicuzza, may have subjectively believed that he was going to be offered the property at a later date, the improvements he made on the property bear no relation to the alleged option.
Because we have found that the doctrine of part performance is inapplicable to the facts of the instant case, we further find that the alleged option to purchase and/or right of first refusal was unenforceable because it failed to comply with the Statute of Frauds. Accordingly, appellant's second assignment of error is not well-taken.
In Target's third assignment of error, it contends that the trial court erred when it dismissed its breach of contract claim in the amended counterclaim and amended third party complaint. Target contends that because the trial court granted it leave to file its amended counterclaim and amended third-party complaint after its December 10, 1999 judgment entry, on remand the successor judge erred by allowing Edgbarton to proceed relative to the assessment of damages without considering the amended claims. Edgbarton contends that even if Target is correct in that the amended counterclaim and amended third-party complaint were not properly ruled upon, they were implicitly disposed of by the court's granting of the forcible entry and detainer claim. We agree.
The trial court granted summary judgment in favor of Edgbarton on its first and second causes of action: possession and unpaid rent. The court also granted Edgbarton summary judgment on Target's counterclaim asserting an option to purchase/right of first refusal. The option theory, dismissed by the trial court, was the same theory upon which Target based its breach of contract action against Toledo Metalizing. Thus, the amended claims had effectively been disposed of by the trial court. Accordingly, appellant's third assignment of error is not well-taken.
In a similar vein, Target, in its fourth assignment of error, asserts that because Edgbarton and Toledo Metalizing failed to a file a responsive pleading as to Target's amended counterclaim and amended third party complaint, Target was entitled to default judgment. We disagree. As set forth above, the trial court's December 10, 1999 judgment entry effectively disposed of the counterclaim and third-party complaint. Thereafter, Target filed an appeal with this court. At that point, the trial court was divested of jurisdiction and appellees could not have properly responded.
The case was remanded in order for the court to determine a specified amount of damages. It was thereafter determined by the trial court that the December 10, 1999 judgment disposed of all the issues before the court. Thus, the trial court did not err when it failed to find appellees in default. Accordingly, appellant's fourth assignment of error is not well-taken.
In Target's final assignment of error, it contends that it was denied its right to a jury trial. Appellees concede that Target is entitled to a jury trial under R.C. 1923.10, but argue that a jury trial in this matter would have been "superfluous" because the only matter left for the trial court's determination was the "mechanical exercise" of determining the amount of unpaid rent to award Edgbarton.
Based upon our disposition of Target's first through fourth assignments of error, we find that, indeed, the only matter before the court was calculation of the amount of unpaid rent owned by Target. Thus, because there were no fact issues remaining, Target was not prejudiced by the trial court's refusal to allow a jury trial. Accordingly, appellant's fifth assignment of error is not well-taken.
On consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ Peter M. Handwork, J.
 Richard W. Knepper, J., Mark L. Pietrykowski,P.J., CONCUR.
[1] Linda Mitchell, statutory agent for Target, is a named appellant.
[2] Target and Calbur were both wholly owned by Jim Spicuzza. Target is engaged in the business of trucking transportation.
[3] In our April 10, 2000 decision we found that in its December 10, 1999 judgment entry, the trial court did not indicate, as required by Civ.R. 54(B), that there is no just reason for delay. And, more importantly, the trial court did not dispose of Edgbarton's claim for $708.25 in regards to the petroleum tank, did not state a specific amount for the award of back rent, and failed to address Edgbarton's request for unspecified additional damages.
[4] The record contains an order signed on August 10, 1999, which granted Target leave to file an amended answer, counterclaim, and third-party complaint. Curiously, however, the August 5, 1999 file stamp is crossed out. Stamped in red ink is the notation "J.E. Tendered Aug. 5 1999 TOLEDO MUNICIPAL COURT; however, it appears that the order was not journalized until December 17, 1999, after the trial court entered judgment in favor of Edgbarton.