MARK et al., Appellants and Cross–Appellees,

v.

LONG et al., Appellees and Cross–Appellants.

[Cite as *Mark v. Long*, 180 Ohio App.3d 832, 2009-Ohio-581.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 07CA2981.

Decided Feb. 6, 2009.

Joseph P. Sulzer, for appellants and cross-appellees.

Rocky A. Coss, for appellees and cross-appellants.

McFARLAND, Judge.

{¶ 1} Plaintiffs-appellants, Dale E. Mark and Mary Ellen Mark, appeal the decision of the Ross County Court of Common Pleas. Though the court found in favor of appellants in their claim against appellees for breach of a farm lease, appellants state that the amount of damages awarded by the trial court was against the manifest weight of the evidence. Defendants-appellees, David W. Long and Barbara Long, raise three assignments of error on cross-appeal, including that the trial court erred in determining that one year's notice was

required to terminate the lease. Because we agree with appellees that one year's notice was not required in these circumstances, we sustain their assignment of error and reverse the decision of the trial court.

## I. Facts

{¶ 2} This action arises out of an oral lease of farmland between plaintiff-appellant Dale Mark and defendant-appellee David Long. Mark had farmed the property in question since approximately 1968 under an oral lease with Long's grandmother, the original owner of the farm. Upon his grandmother's death in 1990, Long and his aunt, Lorraine Granger, inherited the property jointly. Mark continued to farm the property, without a written lease, during Long and Granger's joint tenancy.

{¶ 3} Upon Granger's death in 2002, Long and Granger's daughter voluntarily partitioned the farm. After the partition, Long determined that he no longer wanted to lease his property to Mark. Long testified that he and his wife Barbara advised Mark on at least three different occasions in late 2003 or early 2004 that he would no longer be allowed to farm the property after the 2004 season. Mark denied that he was given such notice until October 2004 when, during a phone conversation with Barbara Long, he was told that another party would be farming the property in 2005. Mark did admit to receiving a written lease in August 2004, drafted by Long, which he refused to sign. The termination date of the lease in the document was November 15, 2004. Long testified that the document was an exit agreement to confirm the termination of the farming lease at the end of the 2004 harvest.

{¶ 4} Long procured another tenant, who began farming the property in 2005. As a result, 22 acres of wheat that Mark had planted in the fall of 2004 was destroyed. On January 21, 2005, Mark and his wife filed a complaint against Long and his wife, alleging breach of an oral year-to-year lease. The Longs answered and counterclaimed.

{¶ 5} After a bench trial, the trial court granted judgment in favor of the Marks on their breach claim in the amount of $10,538. The trial court also ruled in favor of the Marks on the Longs' counterclaims. Dissatisfied with the amount of damages awarded, the Marks filed the current appeal. The Longs timely filed a cross-appeal.

### Assignment of Error on Appeal

1. The trial court erred in its award of damages to the appellant which was against the manifest weight of the evidence.

Assignments of Error on Cross Appeal

1.   An oral agreement to lease a farm for one year terminates at the end of that year and is not automatically renewed for another year by the tenant holding over unless the landlord consents.

2.   The trial court erred in finding that the burden of proof of notice on termination of an oral farming lease was upon the defendant landlord.

3.   The trial court erred in finding that the landlord had not proven notice of termination of an oral farm lease had been given to the tenant farmer in writing at least one year in advance of the termination date.

## II.   First Assignment of Error on Cross Appeal

{¶ 6} Because we find that the resolution of a matter of law in appellees' cross appeal is determinative, we take the assignments of error out of order and begin our analysis with appellees' first assignment of error on cross-appeal.

{¶ 7} In its decision, the trial court stated that because the parties never entered into a written lease and because the lease was renewed on a yearly basis, the relationship created was a year-to-year periodic tenancy.  The court found that in such instances, one year's notice is required to terminate the tenancy. And, because Long did not tell Mark a year in advance that the lease would not be renewed for the 2005 season, Long breached the lease by leasing the property to a new tenant in 2005.

{¶ 8} First we note our standard of review.  " 'We review questions of law de novo.' "   *Porter v. Porter*, 4th Dist. No. 07CA3178, 2008-Ohio-5566, 2008 WL 4717164, ¶ 29, quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.   Determining whether a landlord must give a year-to-year periodic tenant one year's notice in order to terminate the tenancy is a matter of law.  As such, we analyze the issue without deference to the trial court's decision.

{¶ 9} The trial court properly found that the relationship between the parties was a periodic tenancy.  At no point did Mark enter into a written lease for the farmland, either with Long or the prior owners of the property.  All agreements between the parties were oral.  "Ohio law provides that no lease shall be made, and no action shall be brought upon a lease agreement, unless the lease is in writing and signed by the party to be charged therewith."  *Manifold v. Schuster* (1990), 67 Ohio App.3d 251, 254, 586 N.E.2d 1142, citing R.C. 1335.04 and 1335.05.  Accordingly, because it did not comport with the statute of frauds, the lease was invalid.

{¶ 10} "The law provides that a tenancy at will is created when possession of the premises is taken under an invalid lease. * * * Upon payment and acceptance of rent, this tenancy at will then converts to a periodic tenancy." Id. at 255, 586 N.E.2d 1142. Here, year after year, Mark made biannual payments to Long and Long's predecessor in title. Year after year, the payments were accepted and Mark was allowed to farm the property. Thus, a periodic tenancy was created. The trial court held that the period of the tenancy was year to year. The trial court then determined that because the tenancy was year to year, one year's notice was required to terminate the tenancy. We find that the trial court erred in this determination.

{¶ 11} "Notice to quit is not necessary to terminate a tenancy from year to year arising from the tenant holding over his term." *Gladwell v. Holcomb* (1899), 60 Ohio St. 427, 54 N.E. 473, paragraph one of the syllabus. "As the assent of both parties is necessary to the creation of this new contract at the beginning of each year, it is obvious that if the tenant chooses not to hold over, and vacates the premises at the end of any year, the tenancy ceases without liability for rent for the ensuing year, though no notice of his intention to remove be given, as certainly as it does upon the expiration of a lease expressly made for a specific term. So it does, though he hold over, unless the landlord chooses to accept him as a tenant for another year. By remaining in possession without any new arrangement, the tenant is regarded as offering to take the premises for another year upon the terms of his tenancy which has just expired. But the landlord is not bound to accept the offer; and, unless he does so, by receiving rent, or some other act of assent or acquiescence, the tenancy is thus terminated, and notice of his intention not to renew it for another year is unnecessary. The holding over after the end of any year, without the landlord's consent, is equivalent to holding over after the expiration of a lease for a specific term; and, if the landlord does not choose to accept the proffered tenancy for another year, he is at liberty to treat the occupant as a trespasser, and may maintain ejectment against him, without previous notice of his intention not to prolong the tenancy." Id. at 436–437, 54 N.E. 473.

{¶ 12} *Gladwell* remains the law in Ohio. A commercial landlord is not required to give advance notice that a year-to-year periodic tenancy will not be renewed. Recently, the holding in *Gladwell* was implicitly reinforced by the Supreme Court of Ohio in *Maggiore v. Kovach*, 101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790. The issue in *Maggiore* was whether one month's notice was required to terminate a commercial month-to-month periodic tenancy. The court acknowledged that R.C. 5321.17 requires a landlord or tenant in a residential periodic tenancy to give notice of termination. The statute mandates seven days' notice to terminate a week-to-week tenancy and 30 days' notice for a month-to-month tenancy. However, the court found that R.C. 5321.17 applies only to

residential leases. It concluded that commercial landlords are not required to give tenants 30 days' notice in a month-to-month periodic tenancy. The court found that the only notice necessary was the three-day notice required by R.C. 1923.04 in forcible-entry-and-detainer actions. See also *Tower Realty v. Zalenski*, 7th Dist. No. 07 JE 24, 2008-Ohio-3244, 2008 WL 2583131, at ¶ 19 ("Under common law, a month-to-month holdover tenant, or a month-to-month tenant arising from a void lease, does not need to give notice that they are terminating the lease at the end of the current lease period").

{¶ 13} In light of the cases cited above, it is clear that the trial court erred in finding that Long was required to give Mark a year's notice to terminate his commercial year-to-year periodic tenancy. Accordingly, we must reverse the decision of the trial court.

### III. Conclusion

{¶ 14} After reviewing the record, we find that the trial court erred as a matter of law in determining one year's notice is required to terminate a commercial year-to-year periodic tenancy. Therefore, we sustain appellees' first assignment of error in their cross-appeal. Since that assignment of error is dispositive in this case, appellees' remaining assignments of error and appellants' assignment of error are rendered moot. The trial court's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

KLINE, P.J., dissents.

ABELE, J., concurs in judgment only.