[Cite as *Martin v. Jones*, 2015-Ohio-3168.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| TERRY MARTIN, | : | Case No. 14CA992 |
| Plaintiff/Cross-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| NANCY JONES, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| KEAVIN HILL, | : | **RELEASED: 8/5/2015** |
| Defendant/Cross-Appellant. | : | |

<u>APPEARANCES</u>:

Robert J. Judkins, Judkins & Hayes, LLC, Greenfield, Ohio, for appellant.

Joseph P. Sulzer, Chillicothe, Ohio, for cross-appellant.

John B. Caldwell, Young & Caldwell, LLC, West Union, Ohio, for appellee.

Harsha, J.

**{¶1}** Following a lengthy trial the jury returned a verdict finding that Nancy Jones had breached a contract to lease farmland to Terry Martin for 2011 and that Keavin Hill had tortiously interfered with Martin's business relationship with Jones by renting her land that year. The jury awarded Martin compensatory damages for his breach-of-contract claim against Jones, and compensatory damages, punitive damages, and attorney fees for his tortious-interference-with-a-business-relationship claim against Hill. The court overruled Jones's and Martin's postjudgment motions challenging these verdicts and entered a judgment adopting them.

{¶2}    In Jones's first assignment of error she challenges the trial court's denial of her motion for summary judgment on Martin's breach-of-contract claim.  But any error by the trial court in denying her motion was rendered moot or harmless because a subsequent jury trial on the claim established genuine issues of material fact.

{¶3}    In Jones's second assignment of error she asserts that the trial court erred in denying her motion for judgment notwithstanding the verdict, which found that she breached her contract.  However, there was sufficient evidence establishing that the parties entered into a binding oral contract, notwithstanding some lack of specificity regarding the rental price, which was supplied by the parties' course of dealing.   Nor did the statute of frauds invalidate the oral lease, because Martin's part performance of the contract—by spraying the farmland with herbicide, purchasing fertilizer and seed, entering into corn contracts, and leasing an additional tractor—removed the lease from the operation of the statute.  Jones was not entitled to judgment notwithstanding the verdict on Martin's claim for breach of contract.  Jones's related argument in her third assignment of error contesting the denial of her motion for new trial fails for similar reasons.

{¶4}    In Jones's fourth assignment of error she contends that the trial court erred in denying her motion for remittitur[1] seeking a reduced amount of damages.  The trial court did not abuse its discretion in denying her motion because the jury verdict awarding Martin damages for her breach of their oral lease agreement was supported

---

[1] Jones titled her motion in the trial court and on appeal as one in "remitter."  The term referring to the process by which a court reduces the damages in a jury verdict is remittitur.  *See* Garner, *A Dictionary of Modern Legal Usage* 752 (2d Ed.1995), discussing the distinction between the terms.  We will refer to the term of remittitur in this opinion.

by Martin's calculation of lost profits, which included a sum of $12,000 for leasing an additional tractor that was needed under the lease.

{¶5}   In Hill's first assignment of error he claims that the trial court erred in denying his motion for summary judgment.  Because Hill now concedes that he did not file a motion for summary judgment, we reject his claim.

{¶6}   In Hill's second assignment of error he asserts that the trial court abused its discretion by denying his motions for directed verdict and judgment notwithstanding the verdict on Martin's claim that Hill tortiously interfered with Martin's business relationship with Jones.  There was sufficient evidence of an oral contract for Martin to lease Jones's farmland in 2011.  Because the oral lease was not terminable at will, Hill could not rely on the privilege of fair competition to justify his interference with the business relationship.  Hill was not entitled to a directed verdict or judgment notwithstanding the verdict on Martin's tortious-interference claim.

{¶7}   In Hill's third assignment of error he argues that the damages awarded against him were against the manifest weight of the evidence.  Hill invited any error in the trial court's adoption of the jury verdict against him of $2,175 in compensatory damages because his trial counsel advised the court that this sum was "commensurate with his liability" and "fair and proper."  And the record includes evidence that neither the jury nor the trial court lost its way in assessing $45,000 in punitive damages against Hill based on his conscious disregard of Martin's rights to farm Jones's farmland in 2011.

{¶8}   Finally, in Hill's fourth assignment of error he asserts that the trial court erred in awarding attorney fees against him because there was no evidence submitted on the reasonableness of those fees.  Hill forfeited this claim on appeal by stipulating to

the amount of attorney fees incurred by Martin and stipulating it could be submitted to the jury for its consideration. Because the contentions raised in Jones's appeal and Hill's cross-appeal are meritless, we affirm the judgment of the trial court.

## I. FACTS

{¶9}     Martin filed a complaint in the Adams County Court of Common Pleas against Jones and Hill.  In an amended complaint Martin raised claims that Jones breached an oral lease agreement for Martin to farm her land in 2011, that Jones was liable to him based on promissory estoppel, and that Hill and his business, Hills Agri-Tech Services, Inc., tortiously interfered with Martin's business relationship with Jones. Jones and Hill filed answers and counterclaims alleging that Martin had tortiously interfered with Jones's business relationship with Hill.

{¶10}  Jones filed motions for summary judgment, which the trial court denied. The case proceeded to a jury trial, which produced the following evidence.

{¶11}  Martin is an Adams County resident who has farmed for over 30 years. He farms real property he owns as well as other land he leases in four different counties.  In 1998, he asked Jones, a retired schoolteacher who owns a farm in Adams County with approximately 150 acres of farmland, whether he could lease her property to farm.  Jones's property had last been farmed about 10-15 years before so it was overrun with weeds.  They reached an oral agreement for Martin to lease Jones's farmland in 1999 for $50 per acre.  The only condition specified by Jones was that if her son wanted to come back and farm her property, they would have to negotiate a different arrangement.

{¶12} Martin continued to lease Jones's farm on a year-to-year basis for the next 12 years, through 2010. Martin delivered the annual rent to Jones in two different installments—the first in the spring of the year before he started planting and the second in the fall of the year following the harvest. According to Martin, they always agreed on the lease of Jones's farm for the following year in the fall of the preceding year when he delivered the second check. This practice of leasing farmland for the next year by reaching an agreement in the fall of the preceding year was consistent with the general practice, which permitted farming tenants to determine what equipment, seed, and fertilizer they needed for the upcoming year before they planted the crops.

{¶13} Martin testified that the lease agreement was never for a specific price; instead, it followed from what was the year before, unless Jones told him in the fall of the preceding year that she wanted more money or Martin decided to pay her more based on increases in area rental and grain prices. The annual rent Martin paid fluctuated from $7,000 in 1999 to $11,500 in 2010.

{¶14} When Martin farmed Jones's property in 2010, there was a problem with marestail, an invasive weed. By early August 2010, Martin had sprayed the property three times to kill the weeds. According to Martin, around that time he told Jones that he was going to have to spray the property again to get rid of the weeds and that he would have to plant corn the next year—2011. Jones advised Martin that she did not care what he planted on her farmland. Martin paid Winchester Ag $2,175 to spray herbicide on Jones's farmland in November 2010 in preparation for his planting of corn on the property in 2011.

{¶15} In early December 2010, Martin delivered his second rental payment for 2010 to Jones. Martin testified that at this time, he told Jones that they wouldn't have a problem with the weeds next year because of the November spraying of herbicide and that he would be ready to plant corn in 2011. Jones told him that she would see him next spring. According to Martin, they talked about renting her farmland for 2011 at that time and they entered into a verbal lease agreement for the next crop year.

{¶16} Jones testified that she never agreed to lease Martin her farmland in 2011 and that during 2010 she had expressed her dissatisfaction with Martin's repeated spraying of chemicals on her property and her perception that the rent he was paying was below the fair market value. She claimed that Martin told her that if she could find someone to rent her land for a higher price, she should. Conversely, Martin testified that Jones never expressed dissatisfaction with his farming practices, including the spraying of chemicals, or that she thought her farmland was worth more. He also denied telling her that she could rent her land to someone else if they offered a higher rental price.

{¶17} Based in part on his conversations with Jones, Martin ordered seed and fertilizer and entered into contracts to supply 40,000 bushels of corn for 2011. He also leased an additional tractor for 2011 because of the agreement to farm Jones's land.

{¶18} In December 2010, Jones met with Hill in Portsmouth after they had been brought together by a mutual acquaintance. At that meeting Jones expressed her dissatisfaction with Martin's application of chemicals to her farmland and the low rent he was paying. Hill, who was interested in "getting his foot in the door" of Adams County farming, offered to rent Jones's farm sight unseen for $140 an acre in 2011, which was

significantly more than Martin had been paying her.  Although Jones was excited about the offer, she refused it.

**{¶19}**  Martin proceeded to take actions consistent with an oral lease agreement with Jones for the 2011 crop year, including drafting a first-half rent check in late March 2011 in the amount of $6,000. Martin testified that he intended to deliver it to Jones but admitted he had not done so at that time.  He also scheduled an appointment for early April 2011 with the local U.S. Department of Agriculture Farm Service Agency to sign farm-subsidy papers regarding property he would be farming in Adams County in 2011, including Jones's farm.

**{¶20}**  On April 5, 2011, Jones telephoned Hill and asked him if he was still interested in farming her land in 2011.  The next day, Jones and Hill met at Jones's farm and entered into a verbal agreement for Hill to farm Jones's property in 2011 for the rental price of $140 per acre.  On April 8, 2011, Jones contacted Martin and advised him that she had rented her farm to Hill for 2011.  Martin testified that Hill knew that Jones's farm was rented to him and that it had been sprayed to plant corn in 2011.  According to Martin, Hill knew the farm was rightfully Martin's for 2011.  Although he thought he had a valid contract to lease the farm in 2011, Martin offered Jones $150 per acre "just to get through the year" because of the obligations that he had already incurred.  Jones rejected Martin's new offer because she believed she was then obligated to Hill.

**{¶21}**  Martin then went to his scheduled appointment at the Farm Service Agency and signed up the Jones farm for the subsidy program, listing himself as the tenant/producer entitled to the subsidy.  Hill went to the same office and signed papers

requesting the same subsidy.  The agency later resolved the dispute by awarding the subsidy to Hill after asking Jones who her tenant was for 2011.

**{¶22}**  Martin testified that he could not secure farmland in 2011 to make up for the almost 150 acres he lost because Jones breached their agreement.  He calculated his lost profit for 2011 as $52,019.28, and provided detailed testimony supporting his calculation.  Martin further testified that he lost an additional $12,000 attributable to the extra tractor he leased to farm Jones's land in 2011.

**{¶23}**  At the conclusion of the state's case-in-chief, Jones moved for a directed verdict on the claims against her other than the claim for breach of contract; Hill and his business moved for a directed verdict on the claims against them.  The trial court denied the motions for Martin's claims of breach of contract and promissory estoppel/detrimental reliance against Jones and for Martin's claim of tortious interference with a business relationship against Hill, but dismissed Martin's remaining claims, including his claims against Hill's business.

**{¶24}**  The jury returned verdicts:  (1) in favor of Martin on his claim that Jones had breached the contract and awarded him $64,019.28 in compensatory damages against Jones; (2) in favor of Martin on his claim of promissory estoppel/detrimental reliance and awarded him $45,000 in compensatory damages against Jones; (3) in favor of Martin on his claim that Hill tortiously interfered with Martin's business relationship and awarded Martin $2,175 in compensatory damages, $45,000 in punitive damages, and $53,000 in attorney fees against Hill; and (4) in favor of Martin on Jones's and Hill's tortious-interference counterclaims against him.

**{¶25}** Jones and Hill filed motions for judgment notwithstanding the verdict, for new trial, and for remittitur. Martin filed memoranda in opposition, and the trial court held a hearing on the postverdict motions. The trial court granted Jones's motion for a judgment notwithstanding the verdict on the $45,000 promissory estoppel claim against her because it determined that it was duplicative of the breach-of-contract damages against her. The trial court denied the motions in all other respects and entered judgment adopting the remainder of the jury verdicts. Jones appeals and Hill cross-appeals from the judgment.

## II. ASSIGNMENTS OF ERROR

**{¶26}** Jones assigns the following errors for our review:

1. THE TRIAL COURT ERRED IN DENYING APPELLANT JONES' [SIC] MOTION FOR SUMMARY JUDGMENT ON APPELLEE'S CLAIM FOR BREACH OF CONTRACT.

2. THE TRIAL COURT ERRED IN DENYING DEFENDANT APPELLANT NANCY JONES' [SIC] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE BREACH OF CONTRACT CLAIM.

3. THE TRIAL COURT ERRED IN DENYING DEFENDANT NANCY JONES' [SIC] MOTION FOR A NEW TRIAL.

4. THE TRIAL COURT ERRED IN DENYING DEFENDANT NANCY JONES' [SIC] MOTION FOR REMITTER [SIC] TO A REDUCED AMOUNT OF DAMAGES.

**{¶27}** In his cross-appeal Hill assigns the following errors:

1. THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING THE CROSS APPELLANTS MOTION FOR SUMMARY JUDGMENT.

2. THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING THE CROSS APPELLANTS MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT.

3.  THE AWARDING OF DAMAGES TO THE PLAINTIFF AS AGAINST
    THE CROSS APPELLANT WAS AGAINST THE MANIFEST WEIGHT
    OF THE EVIDENCE.

4.  THE AWARDING OF ATTORNEY FEES WAS AGAINST THE
    MANIFEST WEIGHT OF THE EVIDENCE.

### III. LAW AND ANALYSIS

### A. Summary Judgment

**{¶28}**  In her first assignment of error Jones asserts that the trial court erred in denying her motion for summary judgment on Martin's breach-of-contract claim.  In his first assignment of error Hill asserts that the trial court erred in denying his motion for summary judgment.

**{¶29}**  Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56.  *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013–Ohio–3020, 992 N.E.2d 1126, ¶ 19.  Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made.  Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011–Ohio–2266, 950 N.E.2d 157, ¶ 24; *Settlers Bank v. Burton*, 4th Dist. Washington Nos. 12CA36 and 12CA38, 2014–Ohio–335, ¶ 20.

**{¶30}**  The moving party has the initial burden, by pointing to summary judgment evidence, of informing the trial court of the basis for the motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

Once the moving party meets this initial burden, the nonmoving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. *Id.*

**{¶31}** Hill now concedes that the premise of his first assignment of error is incorrect because he did not, in fact, file any motion for summary judgment. He consequently has not met his burden of establishing error, much less prejudicial error. Therefore, we overrule his first assignment of error.

**{¶32}** We turn now to Jones's first assignment of error. A party may appeal the denial of a motion for summary judgment after a subsequent adverse final judgment. *American Family Ins. Co. v. Hoop*, 4th Dist. Adams No. 13CA983, 2014-Ohio-3773, ¶ 23, citing *Balson v. Dodd*, 62 Ohio St.2d 287 (1980), paragraph one of the syllabus ("A trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment").

**{¶33}** Nevertheless, "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994), syllabus. Consequently, as we detailed in *American Family Ins.* at ¶ 24 (citations omitted):

> [I]f a trial court denies a summary judgment motion due to the existence of genuine issues of material fact, and a subsequent trial on these issues of fact results in a verdict supported by the evidence for the party who did not move for summary judgment, then substantial justice requires an appellate court to affirm the denial of summary judgment. To allow a summary judgment decision based upon less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry.

On the other hand, when a trial court denies a motion for summary judgment based upon the resolution of a purely legal question, an appellate court may review that decision regardless of the movant's success at trial. Unlike factual questions, legal questions are not mooted by a subsequent trial that results in a verdict adverse to the movant.

**{¶34}** The trial court denied Jones's motion for summary judgment because it found that "there are genuine issues as to material facts involved in these proceedings." And at the conclusion of Martin's case in chief at trial, Jones's counsel specified that he did not request a motion for a directed verdict at that time on Martin's breach-of-contract claim because he believed "that there is a factual issue as to whether or not there is a breach of contract." Moreover, for the reasons discussed in our disposition of Jones's second and third assignments of error, the jury verdict in favor of Martin on his breach-of-contract claim was supported by the evidence adduced at trial. Therefore, Jones's first assignment of error lacks merit so we overrule it.

### B. Jones's Motion for Judgment Notwithstanding the Verdict

**{¶35}** In Jones's second assignment of error she contends that the trial court erred in denying her motion for judgment notwithstanding the verdict (JNOV). A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the sufficiency of the evidence and therefore presents a question of law which we review de novo. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 25. In deciding a motion for a judgment notwithstanding the verdict under Civ.R. 50(B) the court must construe the evidence in favor of the nonmoving party. Only if the court finds that upon any determinative issue reasonable minds could come to but one conclusion and the moving party is entitled to judgment as a matter of law, the court must grant the

motion.  *Vance v. Consol. Rail Corp.*, 73 Ohio St.3d 222, 231, 652 N.E.2d 776 (1995); *Bungard v. Jeffers*, 2014-Ohio-334, 8 N.E.3d 336, ¶ 11 (4th Dist.).  In doing so, a trial court may not weigh the evidence or judge witness credibility.  *Id.* at ¶ 11.

**{¶36}**  Jones claims that the jury's verdict finding that she had breached a contract with Martin to allow him to lease her farmland for 2011 was not supported by sufficient evidence.  "In order to succeed on a breach of contract claim, a party must prove the existence of a contract, the party's performance under the contract, the opposing party's breach, and resulting damage."  *DePompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20; *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E2d 926, ¶ 25 (4th Dist.).

**{¶37}**  Jones contends that she was entitled to JNOV because there was no evidence of any offer or acceptance, or any evidence of an agreement as to price or term.  The threshold issue is thus whether the parties entered into a binding contract to lease Jones's property to Martin to farm in 2011. The essential elements of a contract are an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and the legality of the object and the consideration.  *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 14.

**{¶38}**  Courts recognize three types of contracts:  express, implied in fact, and implied in law.  *Legros v. Tarr*, 44 Ohio St.3d 1, 6, 540 N.E.2d 257 (1989); *Spectrum Benefit Options* at ¶ 26.  " 'In express contracts the assent to its terms is actually expressed in offer and acceptance.' "  *Legros* at 6, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938).  By contrast a contract implied in fact is " 'a contract that the parties presumably intended, either by tacit understanding or by the

assumption that it existed.' " *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 31, quoting *Black's Law Dictionary* 322 (7th Ed.1999). Finally, contracts implied in law are not true contracts, but liability is imposed based on quasi or constructive contract. *Legros* at 7.

**{¶39}** Because the jury returned a general verdict in favor of Martin on his breach of contract claims and no interrogatories were given to determine which theory the jury may have adopted, we presume that the jury found in favor of Martin on all pertinent issues. *See Stephenson v. Upper Valley Family Care, Inc.*, 2nd Dist. Miami No. 2009CA38, 2010-Ohio-4390, ¶ 50.

**{¶40}** The evidence supports a finding of an express oral contract. The primary difference between express contracts and contracts implied in fact is one of proof—the former is proven by words (oral or written) and the latter is proven by acts, conduct, and circumstances. *See J.S. Keate & Co. v. Barnett's Car Wash, Inc.*, 1st Dist. Hamilton Nos. C-920895 and A-8903768, 1994 WL 10650, *3 (Jan. 19, 1994), citing *Weinstein v. Newman*, 89 Ohio App. 301, 101 N.E.2d 772 (1st Dist.1951).

**{¶41}** Jones asserts that there is no evidence of any offer or acceptance of the parties for Martin to lease Jones's farmland in 2011. There was evidence here from Martin's testimony that established the parties entered into an oral contract to lease Jones's property to farm in 2011 when the parties met in August and December 2010. According to Martin's testimony they agreed to the lease for 2011 in 2010. In August 2010, he advised Jones that he was going to have chemicals sprayed on the weeds in the fall after he harvested the soybean crop and that he was going to plant corn in 2011, and Jones said she did not care what he planted. In December 2010, Martin told Jones

that the farm had been sprayed in November and that he would be ready to plant corn in 2011, and Jones told him she wouldn't see him until next spring. According to Martin, their agreements to lease the property were always consummated in the fall of the previous year, and this was true of their 2011 lease, which was agreed to by early December 2010. Indeed, after their meeting in December 2010, Martin acted consistently with the lease agreement by ordering seed and fertilizer, entering into corn contracts, and leasing an additional tractor based on the oral contract for him to farm Jones's land.

**{¶42}** Jones claims that there was never any agreement concerning the per-acre lease price until Martin delivered and she accepted the first check in the spring of each year. So there was no contract because she never accepted any lease check from Martin for 2011, i.e. without an agreed price term there was no contract. The parties never agreed to a specific per-acre lease price after the first couple years that Martin leased Jones's farm. To be enforceable, a contract must be definite and certain. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19. A contract price must be definite and certain, and if it so vague and indefinite that one party will charge what he will while the other party must guess at his obligation, the contract is illusory and unenforceable. *See Ameritech Publishing, Inc. v. Snyder Tire Wintersville, Inc.*, 7th Dist. Jefferson No. 09 JE 35, 2010-Ohio-4868, ¶ 32; *Vargo v. Clark*, 128 Ohio App.3d 589, 595, 716 N.E.2d 238 (4th Dist. 1998) ("Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement prevent the creation of an enforceable contract").

{¶43}  Nevertheless, " '[a]ll agreements have some degree of indefiniteness and some degree of uncertainty [and] * * * [i]n spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 17, quoting 1 Corbin, *Corbin on Contracts*, Section 4.1 at 530 (Perillo Rev. Ed. 1993).  Consequently, " '[c]omplete clarity in every term of the agreement is unnecessary because all agreements have some degree of indefiniteness and uncertainty.' " *DePompei*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, at ¶ 22, quoting *Advantage Renovations, Inc. v. Maui Sands Resort, Co., LLC*, 6th Dist. Erie No. E-11-040, 2012-Ohio-1866, ¶ 18.  " '[S]eldom, if ever, does the evidence in proof of an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts.  And no such precision is required.' " *DePompei* at ¶ 22, quoting *Rutledge v Hoffman*, 81 Ohio App. 85, 86, 75 N.E.2d 608 (1st Dist.1947).

{¶44}  Martin testified that after the first couple years of leasing Jones's farmland, Jones never said anything about a specific lease price—she would tell him in the fall when he paid the second of the biannual lease sum whether she wanted more money for the next year.  The agreed price was what he paid her the previous year unless Jones indicated in the fall she wanted more—at times, Martin would increase the amount he gave Jones on his own initiative based on the lease rates in the area or the success of the crop season.

{¶45}  Although the lease agreement could have been more specific regarding the exact per-acre lease price, the parties' course of dealing—their words and acts over their twelve-year business relationship indicated that the price was sufficiently specific—

at least the amount of the previous year unless the parties agreed to something different in the fall when the oral lease was agreed upon. The fact that the first lease payment was not normally made by Martin until the spring of the current lease year does not alter this result. *See* Kuehnle and Levey, *Baldwin's Ohio Real Estate Law*, Section 45:6 (2014) ("Particularly in commercial leases, there is often a difference between the date that the lease term commences and the date that the obligation of the tenant to pay rent commences").

**{¶46}** Based upon Martin's testimony and the course of dealing between the parties, the evidence was sufficient to support a finding that the parties had an oral contract for Martin to farm Jones's land for 2011.

**{¶47}** Jones next contends that the parties' lease was unenforceable because of the statute of frauds and that the part-performance exception to the statute was inapplicable. "In Ohio, the Statute of Frauds is embodied in R.C. Chapter 1335." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 438, 662 N.E.2d 1074 (1996). R.C. 1335.04 provides that "[n]o lease * * * shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing * * *." R.C. 1335.05 provides that "[n]o action shall be brought * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought * * * is in writing and signed by the party to be charged therewith * * *." It is uncontroverted here that the parties' lease was not in writing.

**{¶48}** Nevertheless, part performance can remove an oral contract concerning real property from the operation of the statute of frauds. *See OBLH, L.L.C. v. O'Brien*,

11th Dist. Trumbull No. 2013-T-0111, 2015-Ohio-1208, ¶ 20; *Bumgarner v. Bumgarner*, 4th Dist. Highland No. 09CA22, 2010-Ohio-1894, ¶ 27; Kuehnle and Levey, *Baldwin's Ohio Real Estate Law*, Section 39.23 (2014); *Hughes v. Oberholtzer*, 162 Ohio St. 330, 337, 123 N.E.2d 393 (1954) ("Early in the history of the statute of frauds, courts of equity, to prevent the statute [from] being used as a shield by a wrongdoer, evolved the doctrine of part performance to remove a contract from the statute").  "Part performance to be sufficient to remove an agreement from the operation of the statute of [frauds] must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo*." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 209 N.E.2d 194 (1965), paragraph four of the syllabus[2]; *OBLH* at ¶ 21.

**{¶49}**  Thus "[t]he doctrine of part performance which will take a case out of the operation of the statute of frauds is based upon the acts of the parties which are such that it is clearly evident that such acts would not have been done in the absence of a contract and that there is no other explanation for the performance of such acts except a contract containing the provisions contended for by the plaintiff."  *Hughes* at 337-338; *Kiser v. Williams*, 9th Dist. No. 24968, 2010-Ohio-3390, ¶ 15; *King v. King*, 4th Dist. Adams No. 99 CA 680, 2000 WL 326131, *5 (Mar. 20, 2000).

**{¶50}**  Jones suggests that the only pertinent act performed by Martin in reliance on the claimed oral lease agreement was the November 2010 spraying of chemicals to

---

[2] Although *Delfino* involved the statute of conveyances instead of the statute of frauds, the Supreme Court noted that the part-performance exception applied to both provisions because "[t]he basic elements necessary to remove an instrument from the operation of the statute of frauds are also necessary to remove it from the operation of the statute of conveyances."  *Id.* at 286.

kill the marestail weeds. However, the record establishes that Martin also purchased seed and fertilizer, entered into corn contracts, and leased an additional tractor based on the oral agreement to lease and farm Jones's property. Even though he was able to return some of his crop inputs and did not include them in his calculation of damages, the fact that he went ahead with their purchase and the tractor lease supports his belief there was a contract. He also drafted a check for the first half rent and set up an appointment to sign farm-subsidy papers based on the agreement before he was advised by Jones in April 2011 that she was leasing the property to Hill. These constituted unequivocal acts that would not have been performed by Martin if an oral lease did not exist.

{¶51} Rather than applying part performance to avoid the statute of frauds, Jones claims that any damages incurred by Martin were readily ascertainable and could be accounted for by reimbursing him for the $2,175 he spent on the chemical spraying in November 2010 to kill the weeds in preparation for 2011 planting. But this ignores the fact that Jones's late breach of the oral contract prevented Martin from leasing additional farmland to make up for the loss of Jones's farmland; this caused him to lose the profits he would have earned if she had not breached the contract. The doctrine of part performance is not inapplicable simply because the plaintiff claiming a breach of an oral contract seeks damages. *See Delfino*, 2 Ohio St.2d 282, 209 N.E.2d 194 (applying the doctrine in a case involving a breach of a lease in which the plaintiff sought money damages); *Akron Pregnancy Servs., Inc. v. Mayer Investment Co.*, 9th Dist. Summit No. 27141, 2014-Ohio-4779, ¶ 16, 18 (Delfino court "applied the equitable doctrine of part performance * * * to determine whether the plaintiff was entitled to money damages").

**{¶52}** Jones relies heavily on our decisions in *Mark v. Long*, 180 Ohio App.3d 832, 2009-Ohio-581, 907 N.E.2d 759 (4th Dist.) and *Manifold v. Schuster*, 67 Ohio App.3d 251, 586 N.E.2d 1142 (4th Dist. 1990), to claim that the doctrine of part performance does not apply. However, we did not discuss the doctrine of part performance in *Mark* and we held that the acts involved in *Manifold* were deemed insufficient by the trier of fact to invoke the exception. Moreover, in *Mark*, the case involved a holdover tenant who had stayed on the farmland after the expiration of the term in 2004. And there was evidence that the landowner had notified the tenant that he would no longer be allowed to lease the property in late 2003 and early 2004. Conversely, Martin testified that the parties agreed in late 2010 that he could farm the land in 2011, i.e., he was not a holdover tenant who was subject to at-will lease termination after the parties had agreed that he could farm Jones's property in 2011. Consequently, *Mark*, *Manifold*, and other cases cited by Jones addressing holdover tenants and notice to commercial tenants who hold over after the expiration of their terms are inapposite. Martin's part performance of the contract thus removed it from the statute of frauds.

**{¶53}** Based on Martin's testimony about what he and Jones had agreed to in their 2010 conversations and his actions based on those conversations, substantial evidence exists upon which reasonable minds could come to different conclusions on the essential elements of his breach-of-contract claim. Therefore, the trial court did not err in denying Jones's motion for judgment notwithstanding the verdict on Martin's breach-of-contract claim. *See Pepin v. Hansing*, 4th Dist. Scioto No. 13CA3552, 2013-Ohio-4182, ¶ 11 ("A trial court must deny a motion for JNOV if substantial evidence

exists upon which reasonable minds could come to different conclusions on the essential elements of the claim"). We overrule Jones's second assignment of error.

### C. Jones's Motion for New Trial

**{¶54}** In her third assignment of error Jones contends that the trial court erred in denying her motion for new trial under Civ.R. 59(A)(6) and (7). Civ.R. 59(A)(6) authorizes the trial court to order a new trial on a finding that the verdict on which the judgment was entered is not sustained by the weight of the evidence. Civ.R. 59(A)(7) authorizes the trial court to grant a new trial because the judgment is contrary to law. " 'If the jury's verdict is supported as to each element of the plaintiff's case by some competent and apparently credible evidence, a defendant's [Civ.R. 59(A)(6)] motion for new trial should not be granted.' " *Watershed Mgt., LLC v. Neff*, 2014-Ohio-3631, 20 N.E.23d 1011, ¶ 58 (4th Dist. 2014), quoting *Pytel v. Crenshaw*, 2d Dist. Montgomery No. 25487, 2013-Ohio-3552, ¶ 27. A Civ.R. 59(A)(7) motion for new trial because a judgment is contrary to law presents a question of law that we review de novo. *See Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 11CA19, 11CA33, 12CA1, and 12CA6, 2014-Ohio-2017, fn. 22.

**{¶55}** Jones reiterates the same arguments we rejected in overruling her second assignment of error—there was no offer and acceptance in the absence of a specific price and any oral lease was unenforceable because of the statute of frauds. For the reasons previously discussed, the jury verdict in favor of Martin on his claim for breach of contract was sustained by the evidence and was not contrary to law. Therefore, the trial court did not err in denying Jones's motion for new trial. We overrule Jones's third assignment of error.

D. Jones's Motion for Remittitur

**{¶56}** In her fourth assignment of error Jones asserts that the trial court erred in denying her motion for remittitur for a reduced amount of damages. Appellate courts review trial court decisions on motions for remittitur under an abuse-of-discretion standard of review. *See Shepard v. Grand Trunk Western Railroad, Inc.*, 8th Dist. Cuyahoga No. 92711, 2010-Ohio-1853, ¶ 81; *Bd. of Trustees of Sinclair Community College Dist. v. Farra*, 2d Dist. Montgomery No. 22886, 2010-Ohio-568, ¶ 72. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013–Ohio–1777, 991 N.E.2d 218, ¶ 25; *Rose v. Cochran*, 4th Dist. Ross No. 14CA3445, 2014-Ohio-4979, ¶ 17. An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶57}** " 'The general measure of damages for a breach of contract is the amount necessary to place the non-breaching party in the position he or she would have been had the breaching party fully performed under the contract.' " *Watershed Mgt.*, 4th Dist. Pickaway No. 10CA42, 2012-Ohio-1020, ¶ 33, quoting *Osbourne v. Ahern*, 4th Dist. Jackson No. 10CA42, 2012-Ohio-1020, ¶ 21. That is, " '[m]oney damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated.' " *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶

26, quoting *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439, 6 OBR 480, 453 N.E.2d 683 (1983). These damages can include lost profits. *See GM Gas Exploration, Inc. v. Johnson*, 4th Dist. Athens No. 1438, 1991 WL 163644, *5-6 (Aug. 13, 1991).

**{¶58}** Jones first argues that because Martin claimed lost profits due to the breach of $52,019.28, the jury verdict of $64,019.28 was not supported by any credible evidence. But Martin testified that in addition to the lost profits he incurred because of the breach, he also lost $12,000 for leasing an additional tractor that he couldn't use when Jones breached the parties' oral lease agreement. Thus, there was evidence that the Martin's total loss included $12,000 relating to his lease of the additional tractor. Therefore, Jones's argument is meritless.

**{¶59}** Jones next contends that Martin's calculation of lost profits was not supported by the evidence because he assumed a yield of 161 bushels of corn per acre, even though he never obtained a comparable yield when he planted corn in 2003 on her farm. Martin testified, however, that his yield estimate was based on the amount of corn yielded on a farm about three miles away from the Jones farm in 2011. We reject Jones's contention.

**{¶60}** Jones finally argues that Martin's calculation of lost profits was not supported by the evidence because it resulted in a sum that far exceeded Martin's average annual net profit from farming Jones's land from 1999-2010. Yet Martin's detailed testimony about how he calculated the lost profits for 2011 fully supported his calculation. He went through his records of his fertilizer, seed, lime, and spray costs and determined how much these expenses cost per acre. He deducted these expenses

as well as expenses for planting, combining, hauling, and rent he would have paid

Jones from gross sales based on the average yield per acre for corn and the price he

sold corn for in 2011.  Again, we reject Jones's argument.

{¶61}  Therefore, the trial court did not abuse its broad discretion in denying

Jones's motion for remittitur.  The jury verdict awarding Martin $64,019.28 in damages

for Jones's breach of their oral lease agreement was supported by evidence adduced at

trial.  The trial court's decision was based on a sound reasoning process, so we

overrule Jones's fourth assignment of error.

E. Hill's Motions for Directed Verdict and

Judgment Notwithstanding the Verdict

{¶62}  In his second assignment of error Hill contends that the trial court abused

its discretion by overruling his motions for directed verdict and judgment notwithstanding

the verdict on Martin's claim against Hill for tortious interference with Martin's business

relationship with Jones.  As noted, these motions test the sufficiency of the evidence

and present a question of law we review de novo.  *Eastley*, 132 Ohio St.3d 328, 2012-

Ohio-2179, 972 N.E.2d 517, at ¶ 25.  The court can grant the motion only if the court

construes the evidence in favor of the nonmoving party and finds that reasonable minds

could come to but one conclusion upon any determinative issue and the moving party is

entitled to judgment as a matter of law.  *Vance*, 73 Ohio St.3d at 231, 652 N.E.2d 776;

*Bungard*, 2014-Ohio-334, 8 N.E.3d 336, at ¶ 11.

{¶63}  The trial court entered judgment upon the jury verdict in favor of Martin on

his claim for tortious interference with a business relationship against Hill.  The

elements of tortious interference with a business relationship are:  (1) a business

relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Dolan*, 4th Dist. Athens Nos. 11CA18 et seq., 2014-Ohio-2017, at ¶ 45; *compare Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 425, 650 N.E.2d 863 (1995), paragraph two of the syllabus (setting forth comparable requirements to prove a claim of intentional interference with a contract). Tortious interference with a business relationship is similar to tortious interference with a contract, but the result of the interference does not require the breach of contract. It is sufficient to prove that a third party does not enter into or continue a business relationship with the plaintiff. *See Magnum Steel & Trading, LLC v. Mink*, 9th Dist. Summit Nos. 26127 and 26231, 2013-Ohio-2431, ¶ 10.

**{¶64}** Hill raises two arguments in support of his assignment of error. First, he contends that there was no contract between Jones and Martin for him to interfere with. But as noted in order for Martin to establish tortious interference with his business relationship with Jones, he did not have to establish the existence of a contract. *Id.* And as we previously determined in overruling Jones's second and third assignments of error, the record contains sufficient evidence of a valid oral contract for Martin to lease Jones's farmland for 2011. Hill's first contention is thus meritless.

**{¶65}** Hill's remaining and primary claim is that because the contract between Martin and Jones was terminable at will, he could not have tortiously interfered with it, i.e. his actions seeking and in entering into a lease with Jones in 2011 constituted fair competition. "Establishment of the privilege of fair competition, as set forth in Section 768 of the Restatement[, of Torts (1979)], will defeat a claim of tortious interference with

contract where the contract is terminable at will." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), paragraph four of the syllabus. "Thus, where an existing contract is terminable at will, and where all the elements of Section 768 of the Restatement are met, a competitor may take action to attract business, even if that action results in an interference with another's existing contract." *Id.* at 179.

{¶66} We reject Hill's argument because it is based on the erroneous premise that the oral lease between Martin and Jones for 2011 was terminable at will. Hill relies on our decisions in *Mark*, 180 Ohio App.3d 832, 2009-Ohio-581, 907 N.E.2d 759, and *Manifold*, 67 Ohio App.3d 251, 586 N.E2d 1142, to support this premise. These cases held that a tenancy at will occurred when possession of the premises was taken under an oral lease that was rendered invalid because it did not comport with the statute of frauds. No tenancy at will occurred here because there was sufficient evidence to support a finding that the doctrine of part performance applied to remove the parties' oral contract from the operation of the statute of frauds. Consequently, Hill was not entitled to the privilege of fair competition set forth in *Fred Seigel Co.*

{¶67} Therefore, Hill's arguments are meritless. The trial court did not err in denying his motions for directed verdict and judgment notwithstanding the verdict. We overrule his second assignment of error.

F. Award of Damages against Hill

{¶68} In his third assignment of error Hill asserts that the awarding of damages to Martin was against the manifest weight of the evidence. When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence,

the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 20 (clarifying that the same type of manifest-weight analysis applies in civil and criminal cases); *Pinkerton v. Salyers*, 4th Dist. No. 13CA3388, 2015-Ohio-377, ¶ 18, citing *In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014–Ohio–5111, ¶ 22 (applying this standard in a case that involved a burden of proof of clear and convincing evidence). "Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate." *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008–Ohio–4166, 896 N.E.2d 748, ¶ 9 (12th Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). "We will reverse a judgment as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the judgment." *Pinkerton* at ¶ 18.

**{¶69}** Hill first claims that the award of $2,175 in compensatory damages is clearly a duplication of damages assessed against Jones. In response Martin argues that the $2,175 awarded by the jury against Hill for compensatory damages could have been justified as interest constituting a loss of use of the $64,019.28 awarded to Martin on his breach-of-contract claim against Jones. But Martin's argument is not persuasive. Manifestly, the $2,175 awarded in compensatory damages to Martin represented the amount he paid to have Jones's farm sprayed with herbicide in November 2010 in

preparation for planting corn on Jones's farmland in 2011.  Indeed, at the trial court's

hearing on Hill's and Jones's motions for judgment notwithstanding the verdict, for new

trial, and remittitur, the court specifically recognized that the $2,175 in compensatory

damages "was the amount of the spray for the marestail that was applied in November

[2010]."  This expense was already accounted for in Martin's calculation of lost profits

for Jones's breach of their 2011 lease agreement in Exhibit 16 and his testimony

concerning the exhibit at trial.

**{¶70}**  Therefore, the awards for damages for Martin's breach-of-contract claim

against Jones and for Martin's tortious-interference claim against Hill were duplicative in

that small amount.  " 'Regarding duplicative damages, 'the fact that a plaintiff has

separate and independent causes of action in contract and tort does not permit him to

recover more than the amount of damage actually suffered as a consequence of the

injury resulting from the wrongful breach of his contract.' " *D.A.N. Joint Venture III, L.P.*

*v. Med-XS Solutions, Inc.*, 11th Dist. Lake No. 2011-L-056, 2012-Ohio-980, ¶ 46,

quoting *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App.2d 177, 182,

376 N.E.2d 965 (1st Dist. 1977).

**{¶71}**  Nevertheless, Hill is not entitled to reversal of this award of compensatory

damages on appeal.  Hill invited this error when his trial counsel conceded in the past

trial hearings that the total judgment against him should be "commensurate with his

liability in this matter, or an amount not to exceed $2,175 which will reduce the amount

to an amount believed to be fair and proper."  In effect, Hill agreed that the jury verdict

against him for compensatory damages of $2,175 was appropriate.  Based on this

concession, the trial court did not err in entering judgment on the jury verdict awarding

this amount to Martin on his tortious-interference claim against Hill.  *See State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002–Ohio–4849, 775 N.E.2d 517, ¶ 27 ("Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make"); *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶ 10 (even plain error is waived where error is invited); *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶ 22.

**{¶72}**  Hill next contends that the award of punitive damages to Martin on his tortious-interference claim was against the manifest weight of the evidence.  " '[T]he assessment of damages lies so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment,' absent an affirmative finding of passion and prejudice, or a finding that the award is manifestly excessive or inadequate.' "  *Lewis v. Nease*, 4th Dist. Scioto No. 05CA3025, 2006-Ohio-4362, ¶ 53, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 653 N.E.2d 331 (1994).

**{¶73}**  "The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct."  *Burns v. Adams*, 4th Dist. Scioto No. 12CA3508, 2014-Ohio-1917, ¶ 79.  "Punitive damages may be awarded as a punishment to discourage others from committing similar wrongful acts if a plaintiff proves by clear and convincing evidence that a defendant acted with malice."  *Colegrove v. Fred A. Nemann Co.*, 1st Dist. Hamilton No. C-140171, 2015-Ohio-533, ¶ 28.  Malice is "that state of mind under which a person's conduct is characterized by hatred, ill will, or spirit of revenge, or a conscious disregard for the rights and safety of

other persons that had a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1984).

**{¶74}** Hill claims that there was no evidence, much less clear and convincing evidence, presented that he had committed any conscious wrongdoing or conduct that was characterized by hatred, ill will, or spirit of revenge.

**{¶75}** However, Hill ignores Martin's specific testimony that Hill "knew the ground was rented and he offered [Jones] extra money to get his foot in the door in this area from what" Jones told Martin. Martin further testified that Hill knew that Martin was renting the farm and that Martin had had the farmland sprayed in preparation for planting in 2011. According to Martin, he had a good relationship with Jones until Hill interfered. Hill benefitted from Martin's November 2010 application of herbicide to Jones's farmland. This evidence supported the jury award of $45,000 in punitive damages against Martin. Moreover, as the trial court itself observed at the hearing on the defendants' postverdict motions:

> In regard to [remittitur] the Court does not intend to invade the province of this jury on [remittitur]. And, Mr. Hill, I've tried to refrain but your constant disdain that you displayed throughout 9 days of trial and even upon the declaration of this Court's award obviously this jury picked up on it and they picked up on your behavior and interference with this contract and just your noticeable sigh of disdain just now in a courtroom unfortunately is reflective of this jur[y's] verdict against you and their belief that you intentionally interfered with this contract.

**{¶76}** Based upon our review of the voluminous record in this case, neither the jury nor the trial court lost its way in assessing compensatory and punitive damages against Hill on Martin's claim for tortious interference with his business relationship with

Jones.  Thus, the award of these damages is not against the manifest weight of the evidence.  We overrule Hill's third assignment of error.

### G. Award of Attorney Fees against Hill

{¶77}  In his fourth assignment of error Hill argues that the trial court erred in awarding attorney fees against him on Martin's tortious-interference claim.  Hill claims that the award of $53,000 was against the manifest weight of the evidence because there was no evidence concerning the reasonableness of those fees.  Martin testified that he had agreed to pay his attorney $200 per hour, that he had paid his attorney almost $28,000 in fees and costs by the time he testified at trial, and that he still owed his counsel about $25,000 in fees at that time.  After the jury had begun deliberating, it requested the amount of attorney fees incurred by each party.  Counsel stipulated the amounts of attorney fees incurred by each party and these stipulated sums were submitted to the jury.  The parties stipulated that Martin had incurred $53,000 in attorney fees.  This amount was consistent with the sum testified to by Martin. The parties did not object to the fee amounts submitted to the jury.

{¶78}  By not objecting to the amount of Martin's attorney fees submitted to the jury, Hill forfeited any claim on appeal challenging that amount.  *See, e.g., Cain v. Cain*, 11th Dist. Ashtabula No. 2002-A-0086, 2004-Ohio-2448, ¶ 17-22 (trial court did not err by awarding attorney fees without first determining their reasonableness because appellant waived the issue by not raising it below).  We overrule Hill's fourth assignment of error.

### IV. CONCLUSION

**{¶79}** The evidence submitted at the jury trial supported the judgment of the trial court finding in Martin's favor on his breach-of-contract claim against Jones and on his tortious-interference-with-a-business-relationship claim against Hill and the award of damages, including attorney fees.  Having overruled Jones's and Hill's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant and Cross-Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, A.J.:  Concur in Judgment and Opinion.



For the Court



BY:  _____
        William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**